[L. A. No. 21404.   In Bank.   Oct. 17, 1950.]

MAURICE TURNER, Petitioner, v. THE STATE BAR,
Respondent.

Walter S. Hilborn and Byron C. Hanna for Petitioner.

Jerold E. Weil for Respondent.

THE COURT.—Petitioner seeks a review of the recommendation of the Board of Governors of The State Bar that he be suspended from the practice of law for a period of three months.

In 1947, after practicing in Illinois, petitioner was admitted to the bar in California. In 1948 he was charged with and found guilty of violating rule 12 of the Rules of the California State Bar. (26 Cal.2d 35.) This rule provides that a member of The State Bar "shall not communicate with a party represented by counsel upon a subject of controversy, in the absence and without the consent of such counsel. . . ."

The charge grew out of the following situation: In an action brought in Los Angeles County by George W. Davis, his wife, and their copartner, Lebus, of Chicago, petitioner was one of the counsel of record for defendants, whom he had known in Chicago. Attorneys Dasteel and Dottenheim represented plain-

tiffs under a contingent fee contract whereby they were to receive 50 per cent of "any amount recovered by suit, settlement, or otherwise," payment of which was secured by an assignment of "an undivided fifty percent (50%) interest in the proceeds of said claim and in any judgment recovered thereon."

In November, 1947, judgment was rendered in plaintiffs' favor in the sum of $95,000. Thereafter an appeal was taken by new counsel who were substituted in place of defendant and his associates. In January, 1948, execution was returned unsatisfied, and suit on the judgment was then started in Chicago to secure a levy on defendants' assets in Illinois. Both parties secured Chicago counsel to represent them in those proceedings. Petitioner and all attorneys representing the parties, both in Chicago and Los Angeles, knew of Dasteel and Dottenheim's contract for one-half the recovery.

While the appeal in Los Angeles and the Chicago action were pending the Davises requested Dasteel and Dottenheim to effect a settlement of the case. Although some discussions were had, no agreement resulted, and the Davises then began to negotiate directly with defendants in Chicago by long distance telephone. A few days prior to May 14 defendants made an offer to settle for $25,000, which the Davises accepted. Defendants then told the Davises to contact petitioner in Los Angeles, who would make out the closing papers. One of defendants' Chicago attorneys also telephoned petitioner and requested him to draw up a satisfaction of judgment, general release and indemnity agreement, giving him a general outline of the contents of these papers. Petitioner agreed to consummate the settlement as requested and in addition agreed to advance the $25,000 pending arrival of defendants' check in that amount. When Dasteel and Dottenheim were told by the Davises about defendants' offer, they objected to the settlement, declaring that their interest in the case was worth $25,000. Defendants' Los Angeles attorneys also learned of the proposed settlement and promptly informed petitioner they intended to withdraw from the case because the arrangements were being made in the absence and without the consent of Dasteel and Dottenheim.

On May 14, pursuant to a telephone call from petitioner, the Davises went to his office to effect the settlement. They told petitioner it was their understanding with defendants that they were to receive $20,000 and that $5,000 was to be set aside for Dasteel and Dottenheim who, they stated, had

refused to agree to the settlement. The record shows that prior to the Davises' arrival petitioner had two checks made out—one for $20,000 and another of $5,000. They also told petitioner that later on they intended to make a settlement with Dasteel and Dottenheim and that they would credit the $5,000 toward that settlement. While the Davises remained at his office, petitioner had three telephone conversations with Dasteel, during which he told Dasteel that the Davises were in his office and were going to settle for $25,000, and that if Dasteel and Dottenheim would come over they would receive half that sum, but that if they did not do so he would retain $5,000 to protect defendants against their claim for attorneys' fees. Dasteel testified that he told petitioner that he could not take any steps in the matter without consulting Dottenheim, who was not then available, that petitioner's conduct was unethical and that he and Dottenheim would not agree to the settlement.

Various papers, including satisfaction of judgment, release and indemnity agreement, were then prepared by petitioner and executed by the Davises, who held a power of attorney from plaintiff Lebus. Whereupon petitioner gave the Davises a check for $20,000 and a memorandum stating that he was holding the other $5,000 on behalf of Dasteel and Dottenheim. During that afternoon petitioner tried unsuccessfully to place the $5,000 in escrow in a bank on behalf of Dasteel and Dottenheim. The $25,000 was advanced by petitioner, who did not receive reimbursement thereof until two or three days after the settlement had been consummated.

The satisfaction of judgment was filed on May 27, 1948, but was subsequently set aside on motion of Dasteel and Dottenheim, who refused to accept the $5,000 held by petitioner. Thereafter they negotiated a settlement of their fees in the sum of $16,250, which included the money held by petitioner and additional funds contributed by both plaintiffs and defendants.

Petitioner urges the following points: (1) That there was no "subject of controversy" within the meaning of rule 12 at the time petitioner dealt with the Davises because the action had already proceeded to judgment and the parties had orally agreed upon the terms of the settlement; (2) that petitioner acted only in a ministerial capacity in arranging consummation of the settlement; and (3) that plaintiffs were entitled to make a settlement with defendants in the absence

and without the consent of their counsel and regardless of the contingent fee contract.

The only real question is whether petitioner has violated rule 12 as charged, and there seems little room for argument on that point. It is to be noted that the rule prohibits communication "upon a subject of controversy" with a party represented by counsel "in the absence and without the consent of such counsel." Petitioner not only "communicated" with the Davises, after inviting them to his office, but he drew up papers and had the Davises sign them, knowing that their counsel of record had specifically disapproved of the proposed settlement and had refused to participate therein. Although there had been an oral agreement to compromise for part of the amount of the judgment, this agreement did not include all the terms of the settlement, and there were several matters which were undecided such as the form and terms of the documents, particularly the indemnity agreement to be executed by the Davises, and questions as to what was necessary to protect the respective interests of the parties. These were all matters on which differences of opinion might have arisen. Until determination of these questions and consummation of the compromise, the interests of the parties were adverse. It is apparent, therefore, that petitioner's communication with the Davises regarding these matters pending consummation of the compromise was an improper communication "upon a subject of controversy" within the scope and meaning of rule 12. (See *Carpenter* v. *State Bar,* 210 Cal. 520, 523 [292 P. 450]; American Bar Association, Canons of Professional and Judicial Ethics [1947], pp. 8, 179-180, 229-230, 260-262; *In re Atwell,* 232 Mo.App. 186 [115 S.W.2d 527, 528]; *In re Maltby,* 68 Ariz. 153 [202 P.2d 902, 903]; Pirsig, Cases on Legal Ethics, p. 105.)

It cannot be said that petitioner's conduct was excusable on the ground that he was not then attorney of record for defendants or that he was acting in a ministerial capacity. He had previously been defendants' attorney of record, he was acting at the request of their counsel of record, and to all intents and purposes he was still acting for them and looking after their interests in the pending litigation. Although there is evidence that defendants' Chicago attorneys instructed petitioner as to the contents of the papers to be drawn by him, it is obvious that his activities were not limited to those of a mere scrivener and that, particularly in connection with the matters of indemnity and protection against

the claims of Dasteel and Dottenheim, he was communicating with the Davises upon a subject of controversy.

Petitioner relies. strongly on his claim that plaintiffs were entitled to make a settlement with defendants in the absence and without the consent of their counsel and regardless of the contingent fee contract. The existence of such a right on the part of plaintiffs, however, could not justify or excuse petitioner's conduct in communicating with the opposing parties concerning a subject of controversy, contrary to rule 12, when he knew that they had counsel of record who had not consented thereto.

In view of all the circumstances, it cannot be said that a suspension of three months is too harsh. It is therefore ordered that petitioner be suspended from the practice of the law in this state for a period of three months, effective 30 days after the filing of this order.