[L.A. No. 29883. In Bank. June 14, 1973.]

HAROLD A. ABELES, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Caidin, Kalman, Hartman & Sampson, Newton Kalman and Harvey M. Grossman for Petitioner.

F. LaMar Forshee, Herbert M. Rosenthal and Christopher M. Reuss for Respondent.

## OPINION

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board that petitioner be suspended from the practice of law for 60 days.[1]

Petitioner, who was admitted to practice in 1955, has no prior disciplinary record. In the instant proceeding he was charged with, inter alia, wilfully violating rule 12 of the Rules of Professional Conduct, which provides that "A member of the State Bar shall not communicate with a party represented by counsel upon a subject of controversy, in the absence and without the consent of such counsel. . . ." (See Bus. & Prof. Code, § 6077.)[2] Petitioner denied the charges.

### The Facts

About 1965 a joint venture for the production of a film was entered into between William Bates, L. Jensen, and Neil Stein, doing business as Golden Land Properties, and Apostolof Film Productions, Inc. (hereafter called Apostolof, Inc.), a corporation formed by Stephen Apostolof.

A disagreement arose between Golden Land Properties and Apostolof, Inc., and as a result thereof a lawsuit was filed in April 1967. The action was captioned Bates, Jensen and Stein, doing business as Golden Land Properties, v. Apostolof, Inc., et al. Slavitt, Edelman and Weiser appeared on the pleadings as counsel of record for the plaintiffs, and petitioner represented the defendants.

Various documents were filed in the action, and in December 1967 Apostolof's deposition was taken. After that date there was no further activity in the litigation until 1969, at which time new counsel was substituted for Jerry Edelman of the above named firm.

Before June 11, 1968, Stein and Apostolof met accidentally at a restaurant. According to Apostolof, at that time Stein denied having filed the lawsuit and at a later meeting repudiated the accusations in the complaint. Apostolof testified that he repeated Stein's remarks to petitioner and asked petitioner to prepare for Stein's signature an affidavit containing the remarks.

---

[1]Nine voted for the recommendation. Six voted against it on the ground that such discipline is excessive.

[2]Business and Professions Code section 6077 provides: ". . . For a wilful breach of any of [the rules of professional conduct], the board has power to discipline members of the State Bar by reproval, public or private, or to recommend to the Supreme Court the suspension from practice for a period not exceeding three years of members of the State Bar."

On June 11, 1968, Stein and Apostolof met petitioner at his office. Petitioner testified that Stein told him that Stein "was not represented by . . . Edelman" and had "never authorized . . . Edelman to file any action," and petitioner's testimony was corroborated by Apostolof and Joseph Copelan, an attorney who had an office in the same suite as that of petitioner.[3]

In the absence and without the consent of Slavitt, Edelman and Weiser, petitioner then submitted to Stein for his signature an affidavit that denied having authorized the filing of the action and repudiated various allegations in the complaint, and Stein signed the affidavit.[4] Before doing so Stein asked whether he should not consult with his attorney Barton Schuman, who had an office in the same building as that of petitioner, and petitioner replied that he did not think it was necessary to do so.[5] The affidavit has never been used.

Additional evidence was presented relating to whether the firm of Slavitt, Edelman, and Weiser was authorized to act for Stein in the action against Apostolof, Inc. Edelman testified: Before the action was filed he discussed the complaint with Stein and the other plaintiffs. He also discussed with them and attorney Schuman the terms of Edelman's representation of Golden Land Properties, and it was agreed by Stein and the others that Edelman would be paid a specified hourly fee. Edelman did not have a written retainer agreement.

Stein testified: He never met with Edelman regarding the action against Apostolof, Inc., and never discussed with Edelman what Edelman's compensation would be for representing the plaintiffs in that action. However, Stein authorized Bates to file that action and to retain Edelman for that purpose and Stein considered that Slavitt, Edelman and Weiser represented him in the Apostolof case. In a deposition Stein stated that he did not consider that the foregoing firm represented him "personally."

Petitioner testified: He was aware that Slavitt, Edelman and Weiser appeared as the attorneys of record for the plaintiffs in the action against Apostolof, Inc. However, when Stein signed the affidavit petitioner did not

---

[3]Stein's account of what was said did not include the above statements, but he was not specifically asked whether he had made them. Stein also testified that he did not recall telling Apostolof that Stein had not authorized the lawsuit.

[4]After Stein signed the document Apostolof assigned to Stein an interest in a film. Apostolof testified that the assignment had nothing to do with Stein's signing the affidavit.

[5]Schuman represented Stein in connection with the dissolution of Mutual Brokers, an entity in which Stein and Bates were partners. Edelman represented Bates in that matter.

believe that the foregoing firm represented Stein. Petitioner believed Stein's statements that Stein "was not represented by . . . Edelman" and "never authorized . . . Edelman to file any action." Also petitioner "thought Stein was [his] client, and thought they had filed an action for [his] client without [the client's] consent." He assumed that Stein was his client because petitioner prepared the joint venture agreement between Golden Land Properties and Apostolof, Inc., and represented "the individuals there" and when Stein said he never authorized the action petitioner felt that Stein should have been named a party defendant. It was petitioner's understanding that if a partner refuses to join in a lawsuit he must be made a party defendant. Petitioner had no recollection of trying to contact Slavitt, Edelman and Weiser on June 11, 1968, and when asked "Did you ever question Mr. Edelman about his representation of Mr. Stein?," petitioner replied, "I never had any reason to until June 11, 1968. I assumed he wasn't on June 11th."

### The Findings and Recommendations

The local committee found, inter alia, that "Bates obtained consent from Stein to file an action through . . . Slavitt, Edelman and Weiser against Apostolof, Inc. with . . . Bates, . . . Jensen, and . . . Stein named as plaintiffs" and that the "nature and extent of the attorney-client relationship between [that firm] and Stein is not clear." The local committee concluded that there was insufficient proof that petitioner wilfully violated rule 12 and recommended that the proceeding be dismissed.

The board, without receiving additional evidence, unanimously adopted new findings. It found, inter alia, that ". . . At all pertinent times herein [petitioner] knew that . . . Slavitt, Edelman et al., represented the plaintiffs [in the action in question] and [petitioner] . . . failed to obtain the consent of [that] law firm . . . to [the communication between petitioner and Stein on June 11, 1968]."

The board also found, as did the local committee, that Stein told Apostolof that Stein had not authorized the filing of any action against Apostolof, Inc., that Apostolof told petitioner what Stein said, and that Stein thereafter similarly stated to petitioner that Slavitt, Edelman and Weiser had no authority to file the litigation on Stein's behalf.

### Petitioner's Contentions

Petitioner complains of the board's failure to make a specific finding that Stein was represented by Slavitt, Edelman and Weiser in the action against

Apostolof, Inc. ■ However, such a finding appears implicit in the board's quoted finding regarding petitioner's knowledge, and in any event the board's findings are not binding upon us, and we are empowered to review the record as a whole (*Mrakich* v. *State Bar of California,* 8 Cal.3d 896, 905 [106 Cal.Rptr. 497, 506 P.2d 633]).

Petitioner further claims (1) that the evidence does not support a finding that (a) Stein was "a party represented by counsel" or (b) petitioner knew that Stein was so represented; (2) that at the time of the events in question there was no "subject of controversy"; and (3) that the record does not support a determination that any breach of rule 12 was wilful.[6] He asserts that rule 12, in referring to "a party represented by counsel" contemplates "not merely that the attorney act as ostensible representative of a party, but that he actually be such." We do not agree with petitioner's construction of rule 12 or with his foregoing claims.

■ Rule 12 prohibits communication "upon a subject of controversy" with "a party represented by counsel" in the absence and without the consent of such counsel. (See *Turner* v. *State Bar,* 36 Cal.2d 155, 158 [222 P.2d 857].) This rule "is necessary to the preservation of the attorney-client relationship and the proper functioning of the administration of justice. . . . It shields the opposing party not only from an attorney's approaches which are intentionally improper, but, in addition, from approaches which are well intended but misguided.

"The rule was designed to permit an attorney to function adequately in his proper role and to prevent the opposing attorney from impeding his performance in such role. . . . " (*Mitton* v. *State Bar,* 71 Cal.2d 525, 534 [78 Cal.Rptr. 649, 455 P.2d 753].)

■ ■ ■ ■ In view of the purposes of the rule we believe that "a party represented by counsel" includes a party who has counsel of record whether or not that counsel was in fact authorized to act for the party.[7] If the quoted words were interpreted to include counsel of record only if such was in fact authorized to act for the party, harm could result

---

[6]Petitioner also attacks certain details in the board's findings, which details have been omitted from the above summary of the findings. Those details are not of critical importance, and it is therefore unnecessary to consider the merits of petitioner's attacks upon them.

[7]Any dispute as to the authority of the counsel of record to act for the party he purports to represent may be raised in the trial court. (See, e.g., *People* v. *Mariposa Co.,* 39 Cal. 683, 684-685; *Clark* v. *Willett,* 35 Cal. 534, 538-540; *Wilson* v. *Barry,* 102 Cal.App.2d 778, 779-780 [228 P.2d 331]; *People* v. *Honey Lake Valley Irr. Dist.,* 77 Cal.App. 367, 374 [246 P. 819]; Basic Cal. Practice Handbook (Cont. Ed. Bar 1959) p. 26.) The dispute should not be resolved unilaterally by the opposing attorney.

to attorney-client relationships and to the administration of justice. Under the latter interpretation an opposing attorney could deal directly with a party, who was known to the attorney to have counsel of record, upon a subject of controversy with impunity in some cases, even though the counsel of record had actual authority to act for the party, since it might be impossible to show that the opposing attorney had knowledge of that authority and wilfully violated rule 12.

■ Here it was stipulated that "During all times herein relevant Slavitt, Edelman & Weiser appeared on the pleadings as being counsel of record for the plaintiffs in [the action against Apostolof, Inc.]" and that Stein was named as one of the plaintiffs in that action. Petitioner admittedly knew that the foregoing firm appeared as counsel of record for the plaintiffs and that Stein was named as a plaintiff. Thus the record supports findings that Stein was a party represented by counsel within the meaning of rule 12 and that petitioner knew that Stein had counsel of record in the action.

■ Petitioner contends that at the time of the events in question there was no "subject of controversy" because the action against Apostolof, Inc., was inactive and apparently had been abandoned. However, it was stipulated that the affidavit petitioner submitted to Stein for his signature contradicted allegations in the complaint in that action and it appears without dispute that the action was still pending. Accordingly, the communication was "upon a subject of controversy" even though the action may then have been inactive. It could not be assumed that the action had been abandoned.

It is for a "wilful breach" of the Rules of Professional Conduct that Business and Professions Code section 6077 authorizes discipline. (See fn. 2.) " 'To establish a wilful breach, it must be demonstrated that the person charged acted or omitted to act purposely, that is, that he knew what he was doing or not doing and that he intended either to commit the act or to abstain from committing it. [Citations.] The wilfulness or intent may be proved by direct or by circumstantial evidence. [Citations.]' " (*Millsberg* v. *State Bar,* 6 Cal.3d 65, 74 [98 Cal.Rptr. 223, 490 P.2d 543], quoting from *Zitny* v. *State Bar,* 64 Cal.2d 787, 792 [51 Cal.Rptr. 825, 415 P.2d 521].) " 'It is . . . immaterial that petitioner may have been ignorant of the provision . . . that he violated.' " (*Millsberg* v. *State Bar, supra,* at p. 75, quoting from *Zitny* v. *State Bar, supra,* at p. 793.) "A mistake of law made in good faith may be a defense to an alleged violation of Business and Professions Code section 6067 (oath upon admission) [citation] but 'In contrast section 6077 proscribes any wilful violation of the Rules of Professional Conduct and does not make knowledge of the rules an element of

the offense.' (*Zitny* v. *State Bar* at p. 793.)" (*Millsberg* v. *State Bar, supra,* at p. 75.)

Here, as we have seen, admittedly petitioner knew that Slavitt, Edelman and Weiser appeared as counsel of record for the plaintiffs in the action against Apostolof, Inc. Petitioner also must have known that he was communicating with one of the plaintiffs (Stein) in the absence and without the consent of that firm and must have been aware of the contents of the affidavit that he submitted to Stein for his signature. ■ We conclude that petitioner knew what he was doing and intended to commit the act. Thus his breach of rule 12 was wilful.[8] It is immaterial that petitioner may have been mistaken as to the scope of rule 12, since knowledge of the rules is not an element of the offense.

Petitioner contends that in any event 60 days' suspension, as recommended by the board, is excessive. As we have seen, six board members thought such discipline excessive. ■ The fact that petitioner has no prior disciplinary record is a matter in his favor (see *Mrakich* v. *State Bar of California, supra,* 8 Cal.3d 896, 907), and his instant misconduct may have reflected only an error in judgment based on his misinterpretation of rule 12 and Stein's statement to him that Stein was not represented by Edelman. Under the circumstances we are satisfied that a public reprimand will constitute sufficient discipline. This opinion shall serve as such reprimand.

---

[8]As heretofore appears, the local committee concluded that there was insufficient proof that petitioner wilfully violated rule 12. Petitioner points to the principle that "Great weight is given . . . to the findings of the committee as to credibility of witnesses and evaluation of conflicting statements, particularly where the findings of the committee and the disciplinary board are in conflict. Under such circumstances this court is ordinarily reluctant to reverse the committee's decision." (*Barreiro* v. *State Bar,* 2 Cal.3d 912, 923 [88 Cal.Rptr. 192, 471 P.2d 992].) However, that principle does not govern here. In the instant case the critical question is the proper interpretation of rule 12. From the stipulated or undisputed facts it appears that petitioner wilfully violated that rule as interpreted herein.