[No. A070086. First Dist., Div. One. Feb. 23, 1996.]

RICHARD HERBERT JACKSON, Plaintiff and Respondent, v.
INGERSOLL-RAND COMPANY et al., Defendants and Appellants.

**COUNSEL**

Coburn & Croft, J. William Newbold, Michael B. Minton, Dudley Von Holt, Wright, Robinson, McCammon, Osthimer & Tatum, Charles E. Osthimer III, Peter B. Logan and Thomas H. Nienow for Defendants and Appellants.

Kazan, McClain, Edises, Simon & Abrams, Steven Kazan and Ellen Lake for Plaintiff and Respondent.

## Opinion

**STRANKMAN, P. J.**—Defense counsel was disqualified for communicating with plaintiff's ex-wife, a former plaintiff whose loss of consortium cause of action was dismissed over two years earlier after she separated from plaintiff. The trial court found that defense counsel's communication violated a professional ethics rule proscribing communications with represented parties. (Rules Prof. Conduct, rule 2-100 [Deering's Cal. Codes Ann. Rules (State Bar) (1988 ed., 1995 pocket supp.)] (Rule 2-100.) Plaintiff claims his ex-wife continued to be represented by the law firm retained to prosecute their case while married, and defendants claim the ex-wife was no longer a represented party and could be freely contacted. We find no basis for the trial court's conclusion that plaintiff's ex-wife was a represented party, and reverse the disqualification order.

### Facts

In 1991, respondent Richard Herbert Jackson sued appellants Ingersoll-Rand Company and Voegtly and White claiming he was injured by his occupational use of their vibrating pneumatic tools. Respondent stated several causes of action, including negligence and product liability. Respondent's wife, Janice Lee Jackson, also joined as a plaintiff and sued for loss of consortium. Respondent and his wife initially appeared in propria personas, but were represented by Kazan, McClain, Edises, Simon & Abrams (Kazan firm) in February 1992 when plaintiffs filed an amended complaint.[1]

Respondent and his wife separated in March 1992. In August 1992, Ms. Jackson dismissed her loss of consortium cause of action, and the Kazan firm served notice of the dismissal upon appellants' counsel, Jane Curran Pandell. In a September 1992 letter to Attorney Pandell's firm, the Kazan firm stated that Ms. Jackson was "no longer a party in this matter." Respondent petitioned for dissolution of his marriage in April 1993 and judgment of dissolution was filed in June 1993. In the division of property, respondent received all assets and liabilities from "any/all lawsuits handled by attorney's Kazan . . . ." The dissolution papers were received by Attorney Pandell at some point and later used by her in respondent's deposition.

Respondent testified in his deposition that he believed his marriage failed, in part, because of the injuries he suffered from appellants' tools. Attorney Pandell decided to depose respondent's ex-wife and telephoned her on January 22, 1995, to schedule a convenient time. Attorney Pandell immediately identified herself as opposing counsel in respondent's personal injury

---

[1]The Kazan firm name has changed over the years. We refer to the firm by its current name.

action. According to Attorney Pandell, Ms. Jackson said she thought the "case had already been concluded and that she had had no involvement in the case as a party for over two years since she went into her ex-husband's attorney's office 'to sign some papers' to withdraw from the case because she 'did not want any part of it.'" Attorney Pandell says Ms. Jackson was agreeable to being deposed, but feared respondent's retaliation and asked that he be excluded from the deposition.

Attorney Pandell wrote to the Kazan firm advising it of her intention to depose Ms. Jackson and requesting that respondent not attend the deposition. The Kazan firm denied the request and accused Attorney Pandell of violating an ethical rule of the profession proscribing contact with represented parties. (Rule 2-100.) Attorney Pandell replied that Ms. Jackson was no longer represented by the Kazan firm and on February 1, 1995, subpoenaed Ms. Jackson for a deposition. That day, Ms. Jackson telephoned Attorney Pandell and reported, in a recorded message, that she rebuffed an attorney with the Kazan firm who called her with warnings of unpleasant disclosures if she is deposed. In a transcription of the message, Ms. Jackson states that the Kazan firm does not represent her and that she is being harassed by her ex-husband and his attorneys.

The Kazan firm moved to disqualify Attorney Pandell and appellants' other attorneys from further participation in this litigation on the grounds that the attorneys were unethical in contacting Ms. Jackson, a represented party. A superior court retired judge, sitting by stipulation, granted the motion over appellants' opposition. The court disqualified Attorney Pandell under Rule 2-100 and ordered her to appear for an in camera conference to determine the extent of the violation for possible disqualification of appellants' other attorneys. Appellants' motion for reconsideration was denied and they appealed, obtaining a stay of further proceedings.

## DISCUSSION

■ A trial court has the authority to disqualify attorneys who violate professional ethical rules because every court has the power to control, "in furtherance of justice," the conduct of persons connected with its proceedings. (Code Civ. Proc., § 128, subd. (a)(5); *Comden v. Superior Court* (1978) 20 Cal.3d 906, 916, fn. 4 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562], cert. den. (1978) 439 U.S. 981 [58 L.Ed.2d 652, 99 S.Ct. 568].) Disqualification is proper to assure fairness in judicial proceedings—its point is not to punish ethical transgressions, but to prevent continuing, detrimental effects upon the proceedings. (*Chronometrics, Inc. v. Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 607 [168 Cal.Rptr. 196].) A court's determination to disqualify counsel lies within its discretion, but is subject to reversal on appeal

if there is no reasonable basis for it. (*Nalian Truck Lines, Inc.* v. *Nakano Warehouse & Transportation Corp.* (1992) 6 Cal.App.4th 1256, 1261 [8 Cal.Rptr.2d 467].)

■ Here, the court disqualified Attorney Pandell under Rule 2-100. Rule 2-100 provides, in relevant part: "While representing a client, a member [of the California State Bar] shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer." Contact with represented parties is proscribed to preserve the attorney-client relationship from an opposing attorney's intrusion and interference. (*Abeles* v. *State Bar* (1973) 9 Cal.3d 603, 609 [108 Cal.Rptr. 359, 510 P.2d 719] [discussing precursor to Rule 2-100].)

Was Ms. Jackson a represented party?[2] Under Rule 2-100, "party" broadly denotes person, and is not limited to litigants, so Ms. Jackson's dismissal from the case does not conclusively settle the question. (Drafter's notes, Rule 2-100.) However, her dismissal from the case in August 1992 does raise serious doubts as to whether the Kazan firm continued to represent her over two years later, in January 1995, when Attorney Pandell called her.

Steven Kazan's declaration provides no substantial evidence that his firm represented Ms. Jackson in January 1995. Kazan acknowledges Ms. Jackson's August 1992 dismissal from the case, and then states in vague legalese that "[t]hereafter, [the Kazan firm] provided assistance and/or performed legal services to or on behalf of Ms. Jackson regarding the subject matter of this action." As evidence of continued representation, Kazan only cites his firm's November 1992 investigation on whether to seek a protective order preventing the use of Ms. Jackson's medical records which had been subpoenaed from third parties when she was still a plaintiff in the action. Absolutely no evidence was offered that the Kazan firm provided legal counsel to Ms. Jackson after November 1992.

The overwhelming weight of the evidence is that the Kazan firm was not representing Ms. Jackson in 1995. The Kazan firm had been retained by respondent and Ms. Jackson to prosecute an action for respondent's alleged injuries. Her interest in the case, and need for legal representation, ended upon the dissolution of her marriage to respondent and dismissal of her only cause of action. Respondent received all assets and liabilities from the case

[2]No violation of Rule 2-100 occurs unless opposing counsel contacts a represented party whom counsel "knows" to be represented. We find that Ms. Jackson was not a represented party but, even if she were, such representation was opaque and beyond Attorney Pandell's knowledge.

in the parties' marital property division. Ms. Jackson herself repudiated any attorney-client relationship with the Kazan firm and, in fact, charged it with harassment and suggested that the firm was trying to dissuade her from testifying.

Respondent argues that all these facts are irrelevant; it does not matter that Ms. Jackson's involvement with the case ended over two years before the opposing attorney's contact and that Ms. Jackson denies being represented by the Kazan firm. All that matters, says respondent, is that the Kazan firm remained Ms. Jackson's "counsel of record." Respondent has misread our Supreme Court in fashioning his odd concept of "counsel of record" who represents no client.

In a statement highlighted by respondent in his brief, the Supreme Court in *Abeles* said that " 'a party represented by counsel' includes a party who has counsel of record whether or not that counsel was in fact authorized to act for the party." (*Abeles* v. *State Bar, supra,* 9 Cal.3d at p. 609.) The meaning of the statement is clear when placed in its factual context. In *Abeles,* suit was filed by three partners against a corporation. (*Id.* at p. 606.) The defense attorney was disciplined for meeting with one of the plaintiff partners, and the court dismissed the relevance of the offending attorney's disputed claim that the partner had denied authorizing filing of suit and denied being represented by the partnership's counsel of record. (*Id.* at pp. 607-610.) As a named plaintiff in pending litigation, the partner had counsel of record (attorneys named on pleadings filed on his behalf), and so was "represented by counsel." (*Id.* at pp. 609-610.) An opposing attorney is not free to unilaterally determine that such representation is without authority and contact the represented party, but must submit any authorization dispute to the trial court for resolution. (*Id.* at p. 609, fn. 7.)

The facts in *Abeles* are vastly different from the facts presented here. Respondent's only evidence that the Kazan firm was Ms. Jackson's "counsel of record" is that they filed pleadings on her behalf in early 1992. But her cause of action was dismissed in August 1992 and the Kazan firm never again appeared as "counsel of record." There was no longer a pending case in which Ms. Jackson held any interest. Contrary to respondent's view, an attorney who once appears on behalf of a client does not remain "counsel of record" until time immemorial, forever excluding other attorneys from contacting the former client. Rule 2-100 is designed to preserve existing attorney-client relationships, not to grant an attorney hegemony over former clients through which he or she can obstruct the opposing party's investigation of its case. Just as a corporation cannot preclude opposing counsel from contacting its former employees who may disclose unfavorable facts, an

ex-husband cannot preclude opposing counsel from contacting his former wife who may disclose unfavorable facts. (*Nalian Truck Lines, Inc.* v. *Nakano Warehouse & Transportation Corp.*, *supra*, 6 Cal.App.4th at p. 1263.) We do appreciate respondent's concern that Ms. Jackson may disclose privileged spousal or attorney-client communications in conversations with opposing counsel, but that concern may be addressed by a narrowly tailored protective order. (*Bobele* v. *Superior Court* (1988) 199 Cal.App.3d 708, 714 [245 Cal.Rptr. 144].)

## DISPOSITION

The April 17, 1995, order disqualifying Attorney Pandell and commanding her presence at a conference to determine other possible disqualification of defense counsel is reversed. Appellants shall recover their costs on appeal.

Stein, J., and Dossee, J., concurred.