Filed 9/21/20  Lujan v. Smith CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAVIER LUJAN et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> LAUREN SMITH et al., <br><br> Defendants and Appellants. | D076526 <br><br><br> (Super. Ct. Nos. 37-2018-00026174-CU-MC-CTL, 37-2018-00027813-CU-CO-CTL, 37-2018-00028840-CU-BT-CTL & 37-2018-00029885-CU-MC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Timothy Taylor, Judge.  Affirmed.


Perez Vaughn & Feasby, Jeffrey A. Feasby and Jenna M. Macek, for Defendants and Appellants.

Niddrie Addams Fuller Singh, John S. Addams; and R. Anthony Mahavier for Plaintiffs and Respondent.

I

INTRODUCTION

This appeal arises out of a business dispute among the four members of respondent MJJ&L Holdings, LLC (MJJ&L), a company that assists military

veterans in obtaining public benefits. The feuding members are respondents Javier Lujan and Michael Zuccarello (together with MJJ&L, the MJJ&L Parties), on one side, and appellants Lauren Smith and Joshua Smith (the Smiths), on the other side. Lujan and Zuccarello own a majority of the membership interests in MJJ&L and the Smiths own a minority of the membership interests in MJJ&L.

The MJJ&L Parties filed three lawsuits against the Smiths alleging business torts and breaches of fiduciary duties, the Smiths filed a lawsuit against the MJJ&L Parties asserting similar causes of action, and the trial court consolidated the four lawsuits. Lujan and Zuccarello retained separate personal counsel and, acting as the majority owners of MJJ&L, approved attorney R. Anthony Mahavier to represent MJJ&L in the consolidated action.

A year later, the Smiths filed a motion to disqualify Mahavier as counsel for MJJ&L. The Smiths argued the retention of counsel for a member dispute required the unanimous approval of MJJ&L's members under Corporations Code section 17704.07, subdivision (b)(4), on grounds that it was an act outside the ordinary course of the company's activities.[1] Because Mahavier was approved only by Lujan and Zuccarello—not the Smiths—the Smiths argued that Mahavier had no authority to represent MJJ&L and should be disqualified.

The trial court denied the motion to disqualify Mahavier on two grounds. First, the court found the engagement of counsel was not an act outside the ordinary course of MJJ&L's activities; therefore, a simple majority of MJJ&L's ownership interests could approve Mahavier's retention.

---

[1] All further statutory references are to the Corporations Code.

2

Second, the court found the Smiths engaged in tactical abuse in their pursuit of Mahavier's disqualification.

We discern no abuse of discretion in the trial court's finding that the Smiths engaged in tactical abuse and its denial of the disqualification motion based on that finding. Therefore, we affirm the order denying the disqualification motion. We express no opinion as to the correctness of the trial court's finding that the engagement of outside counsel was not an act outside the ordinary course of MJJ&L's activities.

## II

## BACKGROUND

### 1

MJJ&L is a member-managed limited liability company (LLC) that helps military veterans obtain public benefits. Lujan, Zuccarello, and the Smiths are the members of MJJ&L. Lujan and Zuccarello have a combined majority ownership interest in MJJ&L (owning 60 percent) and the Smiths have a combined minority ownership interest in MJJ&L (owning 40 percent). MJJ&L does not have an operating agreement.

### 2

In the spring of 2018, the members of MJJ&L had a falling out that gave rise to several lawsuits between the MJJ&L Parties and the Smiths.

Lujan and Zuccarello filed two lawsuits against the Smiths and other defendants on May 25, 2018 and June 11, 2018, respectively. The operative complaints contain substantially similar allegations that the defendants breached fiduciary duties owed to MJJ&L and its members, converted MJJ&L's assets, withheld documents to which Lujan and Zuccarello were entitled, and interfered in MJJ&L's business relationships.

3

On June 5, 2018, MJJ&L filed a third lawsuit against the Smiths and other defendants alleging intentional interference with contractual relations and a request for injunctive relief. The operative complaint alleges the Smiths disparaged MJJ&L's reputation, converted assets and revenue from MJJ&L, and improperly solicited MJJ&L's clientele. It also alleges a cause of action seeking to disassociate the Smiths from MJJ&L.

On June 18, 2018, the Smiths and a related company filed a separate lawsuit against the MJJ&L Parties and other defendants. The operative complaint alleges the defendants misappropriated and misused proprietary information, diverted company profits, and breached their fiduciary duties to the company. The trial court consolidated the four lawsuits between the MJJ&L Parties and the Smiths.

At all times relevant to the consolidated action, Lujan and Zuccarello were represented by separate personal counsel. As the majority owners of MJJ&L, Lujan and Zuccarello approved Mahavier to serve as counsel for MJJ&L. The Smiths were not consulted about—and did not approve—Mahavier's retention. Mahavier first notified the Smiths that MJJ&L retained him on May 12, 2018, shortly before the first lawsuit was filed. Mahavier first appeared in the litigation on behalf of MJJ&L in judicial filings dated June 5, 2018.

3

After the litigation began, the parties engaged in extensive discovery related to the consolidated action. MJJ&L issued 21 subpoenas, conducted depositions, and propounded 12 sets of document requests (415 requests), six sets of requests for admission (121 requests), nine sets of special interrogatories (38 interrogatories), and 12 sets of form interrogatories on the Smiths. Zuccarello propounded one set of document requests (13 requests)

4

and Lujan propounded three sets of document requests (244 requests), one set of requests for admission (20 requests), and two sets of form interrogatories. The Smiths propounded hundreds of discovery requests on the MJJ&L Parties and produced thousands of pages of documents in discovery.

The parties participated in substantial motion practice as well. They sought and obtained leave to amend their respective complaints 11 times, often over the opposition of their adversaries. They filed competing motions for preliminary injunctions. Two motions for appointment of a receiver were filed and denied. Further, the parties filed numerous discovery motions, including at least two motions to compel discovery responses, two motions to quash subpoenas, and a motion for a protective order.

4

On May 23, 2019, less than six months before the trial date for the consolidated action, the Smiths filed a motion to disqualify Mahavier from serving as counsel for MJJ&L. They argued Mahavier did not have authority to represent MJJ&L because MJJ&L's members did not unanimously approve his retention.

The Smiths asserted that in the absence of an operating agreement, the default statutory provisions governing the rights and obligations of LLC members determined the membership threshold needed to approve Mahavier's retention. (See § 17701.10, subd. (a)(1)–(2).) Those provisions state that "[a] difference arising among members as to a matter in the ordinary course of the activities of the limited liability company shall be decided by a majority of the members." (§ 17704.07, subd. (b)(3).) But "an act outside the ordinary course of the activities of the limited liability company may be undertaken only with the consent of all members." (*Id.*, subd. (b)(4).)

5

According to the Smiths, the retention of counsel in an intra-company member dispute constituted an act outside the ordinary course of MJJ&L's activities; therefore, the decision to retain Mahavier required the members' unanimous approval.

The MJJ&L Parties opposed the disqualification motion on four grounds. First, they argued the Smiths waived their right to seek disqualification by delaying the motion for a year. Second, they claimed the motion was an act of "gamesmanship" designed to delay the timely progression of the case, which was scheduled for trial on November 22, 2019. Third, they claimed the retention of counsel was an act in the ordinary course of MJJ&L's activities requiring approval from only a simple majority of the membership interests. Fourth, they argued a unanimity requirement governing the retention of counsel would lead to absurd results. In particular, they claimed a unanimity rule would be absurd in cases involving the expulsion of LLC members under section 17706.02, subdivision (e), because the member targeted for expulsion could always refuse to approve counsel to file the expulsion application on behalf of the company.

The Smiths filed a reply in support of their motion to disqualify Mahavier. They argued they did not waive their right to seek disqualification because delay, standing alone, is insufficient to support a finding of waiver. They characterized the claim of gamesmanship as "unsupported and unsubstantiated," noting that they had continued to engage in discovery while their disqualification motion was pending. Finally, they argued a unanimity requirement would not always lead to absurd results because LLC's can adopt operating agreements to alter the default provisions of the Corporations Code, including the unanimity requirement.

On August 2, 2019, the trial court denied the Smiths' motion to disqualify Mahavier from serving as MJJ&L's counsel. It cited two bases for its ruling. First, it found the engagement of outside counsel was not an act outside the ordinary course of MJJ&L's activities. Second, it concluded the Smiths engaged in "tactical abuse," noting both the "questionable" timing of the Smiths' disqualification motion and the "proximity of the trial date."

## III

## DISCUSSION

### 1

### *Standard of Review*

"[A] motion to recuse is directed to the sound discretion of the trial court, and its decision to grant or deny the motion is reviewed only for an abuse of discretion. [Citations.] The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

### 2

### *Legal Principles*

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner

connected with a judicial proceeding before it, in every matter pertaining thereto.' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee Oil*).)

Typically, disqualification motions arise in two factual circumstances: "(1) in cases of successive representation, where an attorney seeks to represent a client with interests that are potentially adverse to a former client of the attorney; and (2) in cases of simultaneous representation, where an attorney seeks to represent in a single action multiple parties with potentially adverse interests." (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.) Disqualification motions can arise in other factual contexts as well, however, such as when an attorney obtains confidential information from an agent of the moving party (*Western Digital Corp. v. Superior Court* (1998) 60 Cal.App.4th 1471), communicates about the subject matter of the representation with a party known to be represented by another attorney in the matter (*Jackson v. Ingersoll-Rand Co.* (1996) 42 Cal.App.4th 1163), or is likely to be called as a witness (*Smith, Smith & Kring v. Superior Court (Oliver)* (1997) 60 Cal.App.4th 573). We are also aware of one case where, as here, disqualification of counsel was sought on grounds that the attorney lacked authority to represent a company in an intra-company dispute. (*Jarvis v. Jarvis* (2019) 33 Cal.App.5th 113 (*Jarvis*).)

Regardless of the context in which a disqualification motion arises, the paramount concern is "to preserve public trust in the scrupulous administration of justice and the integrity of the bar." (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1145.) "Depending on the circumstances, a disqualification motion may involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse

8

underlies the disqualification motion." (*Ibid*.) Courts considering disqualification requests must "ensure that literalism does not deny the parties substantial justice." (*Id*. at p. 1144.)

3

*Application*

The Smiths appeal the order denying their motion to disqualify Mahavier. The trial court denied the motion, finding the engagement of outside counsel was not an act outside the ordinary course of MJJ&L's activities requiring unanimous member approval. Furthermore, the court found there was a strong suggestion the Smiths engaged in tactical abuse when seeking Mahavier's disqualification.

The parties understandably devote the bulk of their briefing to the first finding—that the retention of Mahavier was not an act outside the ordinary course of MJJ&L's activities. On this issue, we have doubts the trial court ruled correctly. As all sides agree, MJJ&L is in the business of assisting veterans obtain benefits. Had MJJ&L retained Mahavier to complete benefits applications for veterans, litigate benefits disputes for MJJ&L's clients, or advocate veterans' issues in legislative or executive fora, we might be more inclined to accept that Mahavier's retention was within MJJ&L's ordinary course of activities. But Lujan and Zuccarello did not approve Mahavier's retention for these or similar purposes. Instead, they approved him to represent MJJ&L in an intra-company squabble over the ownership and management of the company—an act that appears to be *outside* MJJ&L's ordinary course of business. (See *Crouse v. Mineo* (N.C. App. 2008) 658 S.E.2d 33, 38 [filing litigation against co-manager of LLC was not an act "carrying on in the usual way of the [LLC's] business"]; accord *Casey Ranch Ltd. Partnership (CRLP) v. Casey* (2009) 773 N.W.2d 816, 822–823 & 822, fn.

9

4 [filing litigation was within ordinary course of partnership business because it was filed against a third party to collect debt, not a dispute between partners].)

However, we need not resolve this question because the trial court based its disqualification ruling, in part, on a separate finding that the Smiths engaged in tactical abuse. It is well established that disqualification " 'motions can be misused to harass opposing counsel [citation], to delay the litigation [citation], or to intimidate an adversary into accepting settlement on terms that would not otherwise be acceptable.' " (*Zador Corp. v. Kwan* (1995) 31 Cal.App.4th 1285, 1303 (*Zador*); *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 301 ["[I]t is widely understood by judges that 'attorneys now commonly use disqualification motions for purely strategic purposes ....' "]; accord *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.* (1995) 36 Cal.App.4th 1832, 1847 ["[M]otions to disqualify are often used as a tactical device to delay litigation ...."].) When used for such abusive purposes, disqualification motions "pose the very threat to the integrity of the judicial process that they purport to prevent." (*Zador*, at p. 1303.)

The trial court based its finding of tactical abuse on two considerations—the "passage of time and the proximity of the trial date." Thus, we consider the Smiths' delay, as well as the resulting prejudice to MJJ&L, in assessing whether the trial court abused its discretion. " 'Where the party opposing the motion can demonstrate prima facie evidence of unreasonable delay in bringing the motion causing prejudice to the present client, disqualification should not be ordered. The burden then shifts back to the party seeking disqualification to justify the delay. [Citation.] Delay will not necessarily result in the denial of a disqualification motion; the delay and

10

the ensuing prejudice must be extreme.' "[2]  (*Zador*, *supra*, 31 Cal.App.4th at p. 1302.)

A

*Unreasonable Delay*

A court may consider a moving party's delay in seeking disqualification of counsel because "[m]otions to disqualify are often used as a tactical device to delay litigation."  (*Zador*, *supra*, 31 Cal.App.4th at p. 1302; see *Liberty National*, *supra*, 194 Cal.App.4th at p. 847 [a movant's failure to timely seek disqualification is relevant when considering whether to disqualify counsel because "one can properly consider the possibility that the 'party brought the motion as a tactical device to delay litigation.' "].)

It is undisputed that the Smiths first learned Lujan and Zuccarello approved MJJ&L's retention of Mahavier on May 12, 2018, two weeks before the first lawsuit was filed.  It is also undisputed that Mahavier appeared as counsel of record in MJJ&L's judicial filings a few weeks later.  Yet, despite the Smiths' awareness of Mahavier's retention, the Smiths waited until May 23, 2019—approximately a year later—before moving to disqualify Mahavier.

During this lengthy period of delay, the litigation progressed apace.  By the time the Smiths sought disqualification, the parties' complaints had undergone 11 amendments.  The parties had conducted substantial discovery

---

[2]    Courts sometimes examine the moving party's delay and the prejudice to the resisting party to determine whether the moving party waived the right to seek disqualification of counsel (see *River West, Inc. v. Nickel* (1987) 188 Cal.App.3d 1297, 1310 (*River West*)), or whether the moving party is estopped from seeking disqualification of counsel (see *Antelope Valley Groundwater Cases* (2018) 30 Cal.App.5th 602, 625, fn. 18).  Here, we consider these factors in assessing whether the moving party has engaged in tactical abuse.  (See *Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 847 (*Liberty National*).)

and engaged in active law and motion practice.[3] Further, the trial date was approaching on the near horizon. The relatively late stage of the case is a strong sign the Smiths' delay was unreasonable. (See *Liberty National*, *supra*, 194 Cal.App.4th at p. 847 [affirming denial of disqualification motion made "midway through the case"]; accord *Ontiveros v. Constable* (2016) 245 Cal.App.4th 686, 702 [in assessing delay, "the proper focus is on the *stage* of the litigation"].) The trial court did not abuse its discretion in concluding the "passage of time" suggested tactical abuse and denying the Smiths' disqualification motion accordingly.

A further indication the Smiths' delay was unreasonable is the fact that the Smiths do not claim that anyone prevented them from seeking to disqualify Mahavier. (*River West*, *supra*, 188 Cal.App.3d at p. 1309 [courts should consider "whether anyone prevented the moving party from making the motion earlier, and if so, under what circumstances"].) The Smiths were represented by counsel throughout the case—by three different slates of attorneys. Further, Lauren Smith averred she even discussed Mahavier's retention with her legal counsel "on a number of occasions," but "no action was taken by [her] attorneys with regard to [the] issue."

The Smiths assert their year-long delay was reasonable because, prior to *Jarvis*, *supra*, 33 Cal.App.5th 113, there was no published authority in the state addressing whether a business entity's counsel could be disqualified based on a lack of authority to represent the entity. The Smiths emphasize that the *Jarvis* decision was issued on March 19, 2019, and they moved to disqualify Mahavier two months later.

---

3    By the time the Smiths filed their disqualification motion, there were nearly 500 entries on the trial court's register of actions in the consolidated case.

In *Jarvis*, brothers Todd Jarvis (Todd) and James Jarvis (James) each owned a 50 percent interest in a partnership and could not agree what to do with a parcel of land owned by the partnership. (*Jarvis*, *supra*, 33 Cal.App.5th at pp. 122–123.) James filed an action for partition by sale against Todd and the partnership. (*Id.* at p. 123.) Todd approved attorney William P. Roscoe III to defend the partnership and James moved to disqualify Roscoe on grounds that a majority of the general partners did not approve Roscoe to represent the partnership. (*Id.* at p. 124.) The trial court granted the motion to disqualify Roscoe and the Court of Appeal affirmed. (*Id.* at pp. 127, 145.)

In affirming the disqualification order, the *Jarvis* court determined the applicable partnership agreement and partnerships laws did not resolve whether the representation was authorized. (*Jarvis*, *supra*, 33 Cal.App.5th at pp. 135–139.) The court turned to the "values and interests at stake in a disqualification motion" and concluded the trial court did not abuse its discretion in disqualifying Roscoe. (*Id.* at pp. 139, 144.) The *Jarvis* court found no abuse of discretion because James "raised legitimate points regarding Roscoe's duty of loyalty" to the partnership, James sought disqualification "immediately after the [p]artnership made its first appearance," and there was no suggestion disqualification was sought "to delay the litigation." (*Id.* at pp. 139, 142, 143.)

We are not persuaded the *Jarvis* decision renders the Smiths' delay reasonable. As the trial court noted, the operative version of section 17704.07, subdivision (b)(4)—the statute on which the Smiths' unanimity argument depends—was in existence at the outset of this case. Further, the values and interests underpinning the *Jarvis* decision were well established when this litigation began. While the *Jarvis* decision may have been an

13

*impetus* for the Smiths' decision to file the disqualification motion, it did not constitute the *basis* for the disqualification motion and does not justify the Smiths' delay.

As the Smiths have offered no sound rationale for their year-long delay, we conclude the Smiths' delay in seeking to disqualify Mahavier was unreasonable.

B

*Prejudice*

Notwithstanding the Smiths' delay, the Smiths claim the trial court abused its discretion in denying their disqualification motion because MJJ&L purportedly failed to establish that it would suffer prejudice from Mahavier's belated disqualification. We disagree.

"[T]he later [a disqualification] motion is made, the more difficult it is to replace counsel" because "mastery over a complex case is best acquired as the case progresses through discovery." (*Liberty National*, *supra*, 194 Cal.App.4th at pp. 847, 848.) Here, the Smiths sought disqualification after the parties partook in significant discovery, including witness depositions, hundreds of discovery requests, and multiple discovery motions. Mahavier averred the discovery process was "expensive" and "difficult," while the Smiths themselves characterized it as "extensive" and "substantial." Based on our review of the record, these descriptions appear to be accurate.

Depriving MJJ&L of its counsel, after such considerable discovery has occurred, would undoubtedly impose a hardship on MJJ&L. (*Liberty National*, *supra*, 194 Cal.App.4th at p. 848 [affirming order denying motion to disqualify attorney who "gained mastery of [the] case as it was being developed"]; *In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 565 ["[D]epriv[ing] respondent of the counsel of his choice at [a] late stage in the

14

proceedings … would … cause undue hardship to respondent....".) Simply put, we agree with the trial court's assessment of the situation: "[T]ossing Mr. Mahavier out of the case would throw a huge wrench in the works...."

Disqualification would also prejudice MJJ&L because the Smiths seek to recuse counsel that, by the Smiths' own admission, does not appear to have violated his duty of loyalty to MJJ&L. The basis for the disqualification motion was Mahavier's alleged lack of authority to represent MJJ&L, not the existence of a conflict of interest. The Smiths have at times argued there were "issues regarding [Mahavier's] loyalty to MJJ&L." But, at the hearing on the disqualification motion, the trial court directly asked the Smiths' counsel whether counsel was arguing that Mahavier had "not behave[d] in accordance with the canons of ethics." Counsel unequivocally replied, "I'm not, Your Honor." The court again asked whether Mahavier had "done anything so far that [was] not … legitimately in the best interest of the LLC" and counsel replied, "No." These concessions bolster our conclusion that the trial court did not abuse its discretion.

Further, disqualification would prejudice MJJ&L due to the low likelihood that its members would agree to replace Mahavier with new counsel. The Smiths sued MJJ&L for involuntary dissolution and seek, among other remedies, damages from MJJ&L.[4] Given the adverse interests between the Smiths and MJJ&L, the prospect that the members would agree on replacement counsel seems unlikely at best. In fact, during the disqualification hearing, the trial court opined there was "essentially [a] 100

---

[4] In this respect, the current case is distinguishable from the *Jarvis* case, where James (the moving party) did not seek damages; instead, he sought a remedy (partition of the partnership property) "that [was] in the best interests" of the business entity whose counsel he was trying to disqualify. (*Jarvis*, *supra*, 33 Cal.App.5th at p. 141.)

15

percent" certainty that the parties would not approve replacement counsel. The Smiths' counsel concurred, stating "I don't know, but I think that's the likely result."

Due to the low likelihood of a consensus appointment, the Smiths suggested the trial court could appoint a prejudgment receiver to act on MJJ&L's behalf in the litigation. But, as the trial court cautioned—correctly, in our view—a receiver likely would be an extremely costly endeavor for MJJ&L. (*Morand v. Superior Court* (1974) 38 Cal.App.3d 347, 351 [describing a receiver as an " 'onerous expense' "]; Ahart, Cal. Practice Guide: Enforcing Judgments & Debts (The Rutter Group 2020) ¶ 4:852 ["Receiverships are expensive—often to all parties …."].) Thus, it is apparent the Smiths' proposal would not eradicate the prejudice to MJJ&L.

Finally, we note that the Smiths noticed the disqualification hearing for August 2, 2019, a mere three and a half months prior to the trial date. Although the disqualification motion was not filed on the literal eve of trial, the late timing of the motion and the hearing date for the motion certainly threatened to postpone the trial date. Ultimately, the trial date was delayed, as the trial court stayed the proceedings below while the Smiths pursued this appeal. Thus, the timing of the Smiths' disqualification motion and the Smiths' appeal of the order denying disqualification threatened to delay—and have delayed—resolution of MJJ&L's causes of action against the Smiths.

C

*Conclusion*

In sum, the Smiths have not persuaded us that their year-long delay in moving to disqualify Mahavier was reasonable. Further, it is apparent that the Smiths' belated disqualification request would severely prejudice MJJ&L. On this record, we conclude the trial court acted within its discretion when it

16

determined that the Smiths engaged in tactical abuse and denied the Smiths' disqualification motion.

IV

DISPOSITION

The order is affirmed.  Respondents are entitled to their costs on appeal.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


IRION, J.

17