[No. B197248. Second Dist., Div. Six. Aug. 4, 2008.]

DENISE McMILLAN, Plaintiff and Appellant, v.
SHADOW RIDGE AT OAK PARK HOMEOWNER'S ASSOCIATION,
Defendant and Respondent.

## COUNSEL

The Law Offices of John A. Schlaff and John A. Schlaff for Plaintiff and Appellant.

Prindle, Decker & Amaro, Jack R. Reinholtz and Nicholas Paulos for Defendant and Respondent.

## OPINION

**PERREN, J.**—Over 140 years ago, our Supreme Court stated, "A party to an action may appear in his own proper person or by attorney, but he cannot do

both." (*Board of Commissioners v. Younger* (1865) 29 Cal. 147, 149.) The wisdom of this holding is made evident by the case before us.

A plaintiff, having twice been represented by counsel and having twice ended that relationship, represents herself. On the sidelines is a lawyer, not of record, who informs counsel for defendant that he will be making limited appearances in deposition and other unspecified matters for plaintiff. Time for trial is fast approaching and the need to arrange for the depositions of plaintiff's experts requires that counsel meet and confer. Defense counsel contacts plaintiff and confirms that she is representing herself and is counsel of record. A conversation ensues. Within five days of this call, plaintiff, through an attorney who is not of record, moves to disqualify defendant's counsel alleging that the conversations constituted a breach of ethics.

Denise McMillan appeals from the order of the trial court denying her motion to disqualify counsel for respondent Shadow Ridge at Oak Park Homeowner's Association (Association). She contends that, although she was counsel of record in propria persona, opposing counsel acted unethically in speaking with her about the case. We affirm.

## FACTS AND PROCEDURAL HISTORY

This case is a lawsuit between a condominium owner, McMillan, and the Association. On May 18, 2005, McMillan, through the law offices of Loewenthal, Hillshafer & Rosen (LHR), filed a complaint against the Association, alleging that the Association failed to act in accordance with the terms and conditions of the CC&R's (covenants, conditions & restrictions) and breached its fiduciary duty to her.

The Association filed an answer on July 8, 2005, through the law offices of Prindle, Decker & Amaro by Nicholas Paulos (Paulos). Ensuing negotiations resulted in an oral agreement to settle. On March 29, 2006, LHR filed a dismissal of the action to avoid the cost of preparing for trial.

McMillan disavowed the settlement. On June 22, 2006, McMillan's new attorney, C.B. Henrichsen, filed an application to set aside the dismissal. The hearing on the set-aside was continued to July 27, 2006, to allow Henrichsen to formally substitute in as counsel of record for LHR. He did so, and the motion to setaside the dismissal was granted without opposition.

On September 11, 2006, McMillan filed another substitution of attorney removing Henrichsen as her attorney and substituting herself as attorney of record in propria persona.

In October 2006, Attorney John A. Schlaff sent a letter to Paulos informing him that he would be assisting McMillan on the case but would not be substituting in as attorney of record and would not be acting as trial counsel. The letter stated he would be assisting McMillan in a limited fashion by defending any currently scheduled depositions "among other tasks." In the letter, Schlaff said he intended to file a motion to continue trial. Paulos agreed to continue the scheduled depositions to allow time for Schlaff to file a motion to continue the trial. Schlaff was to provide a suggested deposition schedule. However, by the end of November 2006, no motion was filed and no new expert deposition dates were provided.

On December 7, 2006, Paulos called McMillan to advise her of a pending ex parte motion to compel the depositions of her designated experts. In addition to notifying her of the motion, Paulos attempted to meet and confer as required by statute. (Code Civ. Proc., §§ 2023.010, subd. (i), 2016.040.)[1] During that call, other issues regarding the case were discussed, including Schlaff's formal entry into the case, upcoming court dates, a scheduled mandatory settlement conference and the possibility of settlement. McMillan said she was still the attorney of record and that Schlaff was not planning to substitute into the case. During the conversation, Paulos told McMillan not to disclose anything that she had discussed with her attorneys.

On December 12, 2006, Schlaff, though not having formally substituted into the case, filed a motion seeking to disqualify Paulos as the Association's attorney, asserting his conversation with McMillan violated rule 2-100 of the Rules of Professional Conduct of the State Bar of California (rule 2-100). The trial court denied the motion, finding the conversation between Paulos and McMillan was appropriate because McMillan was the attorney of record at the time, no privileged information was disclosed, and there was no prejudicial effect on the litigation.

In this appeal, McMillan, now represented by Schlaff, asserts the motion to disqualify should have been granted because Schlaff had informed Paulos of his limited association prior to Paulos's conversation with McMillan. She asserts that she was prejudiced by her disclosure of privileged information, including her settlement position, in the conversation.

## DISCUSSION

The denial of a motion to disqualify counsel is an appealable order. (*Sharp v. Next Entertainment Inc.* (2008) 163 Cal.App.4th 410, 424, fn. 7 [78 Cal.Rptr.3d 37].) A trial court's decision on a disqualification motion is

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

reviewed for abuse of discretion. (*Derivi Construction & Architecture, Inc. v. Wong* (2004) 118 Cal.App.4th 1268, 1273 [14 Cal.Rptr.3d 329].) The judgment of the trial court is presumed correct, all intendments and presumptions are indulged to support the judgment, conflicts in the declarations must be resolved in favor of the prevailing party, and the trial court's resolution of any factual disputes arising from the evidence is conclusive. (*Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 728 [135 Cal.Rptr.2d 415].)

■ " 'Trial courts in civil cases have the power to order disqualification of counsel when necessary for the furtherance of justice. [Citations.] *Exercise of that power requires a cautious balancing of competing interests.* The court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel . . . .' " (*Mills Land & Water Co. v. Golden West Refining Co.* (1986) 186 Cal.App.3d 116, 126 [230 Cal.Rptr. 461].)

McMillan's motion to disqualify opposing counsel relies on rule 2-100. That rule states: "[A] member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer." (Rule 2-100(A).)

■ The trial court found that no violation of rule 2-100 occurred and we agree. Section 284 provides that a party may change her attorney at any time. Its companion provision, section 285, states: "When an attorney is changed, as provided in [section 284], written notice of the change and of the substitution of a new attorney, or of the appearance of the party in person, must be given to the adverse party. Until then he must recognize the former attorney."

The purpose of these statutes is to have the record of representation clear so the parties may be certain with whom they are authorized to deal. (*People v. Metrim Corp.* (1960) 187 Cal.App.2d 289, 294 [9 Cal.Rptr. 584].) Litigants are not required to investigate the relationship between opposing attorneys of record and their clients. They and the courts have every right to rely on court records as binding on both litigants and the attorneys appearing of record on their behalf. (*People ex rel. Dept. Pub. Wks. v. Hook* (1967) 248 Cal.App.2d 618, 624 [56 Cal.Rptr. 683].)

■ At the time that Paulos spoke to McMillan, the record of the court showed McMillan as her own attorney. McMillan had every right to be

assisted by an attorney not of record, but neither she nor the assisting attorney could unilaterally limit the ability of opposing counsel to confer with the attorney of record. As McMillan was at all times relevant the attorney of record, Paulos was duty-bound to recognize her as such and to treat her accordingly. (§ 285; see *Epley v. Califro* (1958) 49 Cal.2d 849, 854 [323 P.2d 91] [written notice of substitution of new attorney must be given to adverse party; until then, the attorney of record must be recognized as his client's exclusive representative]; see also *Sherman v. Panno* (1954) 129 Cal.App.2d 375, 379 [277 P.2d 80] ["We believe the clear intention of the Legislature, as expressed in section 285 . . . is that the plaintiffs' attorneys were bound by law to recognize defendants' former attorney of record *until they received written notice of a substitution of attorneys*."].)

■ Schlaff's oral statement that he was representing McMillan in a limited capacity was insufficient notice to Paulos. A party in a case being litigated is either represented by counsel or she is not. "The attorney of record has the exclusive right to appear in court for his client and neither the party himself nor another attorney should be recognized by the court in the conduct or disposition of the case." (*Epley v. Califro, supra*, 49 Cal.2d 849, 854.)

Such a rule is necessary. "[W]ith regard to the ethical boundaries of an attorney's conduct, a bright line test is essential. As a practical matter, an attorney must be able to determine beforehand whether particular conduct is permissible; otherwise, an attorney would be uncertain whether the rules had been violated until . . . he or she is disqualified." (*Nalian Truck Lines, Inc. v. Nakano Warehouse & Transportation Corp.* (1992) 6 Cal.App.4th 1256, 1264 [8 Cal.Rptr.2d 467].) Attorneys should not be in peril of committing an ethical breach because they should have known that an opposing party may or would be represented at some future time. (*Snider v. Superior Court* (2003) 113 Cal.App.4th 1187, 1197–1198 [7 Cal.Rptr.3d 119].)

The cases cited by McMillan do not support her position. In each of them, an attorney of record, not a party representing herself, had "associated" another attorney to further the interests of the client, the attorney of record, or both.

In *Abeles v. State Bar* (1973) 9 Cal.3d 603 [108 Cal.Rptr. 359, 510 P.2d 719], an attorney was disciplined for communicating with an opposing party even though the record showed that pleadings had been filed on the party's behalf by a law firm. The court concluded: "In view of the purposes of the rule we believe that 'a party represented by counsel' includes a party who has counsel of record whether or not that counsel was in fact authorized to act for the party." (*Id.* at p. 609; see also *Jackson v. Ingersoll-Rand Co.* (1996) 42

Cal.App.4th 1163, 1168 [50 Cal.Rptr.2d 66] [a party had a "counsel of record" when the attorney's name appeared on a pleading filed on the party's behalf].)

*Bunn v. Lucas, Pino & Lucas* (1959) 172 Cal.App.2d 450 [342 P.2d 508], overruled on other grounds in *Chambers v. Kay* (2002) 29 Cal.4th 142 [126 Cal.Rptr.2d 536, 56 P.3d 645], involved a fee dispute between a party's attorney and law firm associated in by the attorney of record for the party. In *Streit v. Covington & Crowe* (2000) 82 Cal.App.4th 441 [98 Cal.Rptr.2d 193], the court held that an attorney making a "special appearance" is associated with the party's attorney of record. In *Janik v. Rudy, Exelrod & Zieff* (2004) 119 Cal.App.4th 930 [14 Cal.Rptr.3d 751], the court held that an attorney hired by a client for a limited purpose had a duty to advise the client if there are other related matters that the client is overlooking and that should be pursued to protect the client's interest. *Mix v. Tumanjan Development Corp.* (2002) 102 Cal.App.4th 1318 [126 Cal.Rptr.2d 267] involved an attorney who represented himself in propria persona in a lawsuit and hired other counsel to assist him in the litigation. In *Snider v. Superior Court, supra,* 113 Cal.App.4th 1187, the court held that the trial court improperly disqualified an attorney who had spoken to individual employees of a corporation which was represented by counsel.

■ In *Wells Fargo & Co. v. City etc. of S. F.* (1944) 25 Cal.2d 37 [152 P.2d 625], our Supreme Court held that an attorney hired by counsel of record for a party need not file a formal substitution of attorney under section 285 unless he purports to be the party's sole representative. In so holding, the court reiterated the rule applicable here: "It is settled that the attorney of record has the exclusive right to appear in court for his client and to control the court proceedings, so that neither the party himself [citations] nor another attorney [citations] can be recognized by the court in the conduct or disposition of the case." (25 Cal.2d at pp. 42–43.)

■ McMillan's argument turns the principle on its head. While a pro se litigant may divide the duties or representation as would any other lawyer, she may not insulate herself from contact by the court or adversary counsel. Rule 2-100 is intended to preserve the attorney-client relationship. (*Myerchin v. Family Benefits, Inc.* (2008) 162 Cal.App.4th 1526, 1537 [76 Cal.Rptr.3d 816]; *Jackson v. Ingersoll-Rand Co., supra,* 42 Cal.App.4th 1163, 1167.) The preservation of the attorney-client relationship in such a circumstance is achieved by the pro se declining to speak with the adversary or referring him to associated counsel should she wish to do so.

■ Even were the communication to be deemed within the ambit of rule 2-100, the result would be the same. At most, the communication that

McMillan finds objectionable is the purported divulging of a "bottom line" settlement figure. The trial court found, however, that nothing occurred in the conversations that would "have any effect on either the outcome of the litigation or on the way in which the litigation is going to proceed." Indeed, the case had once been settled only to have McMillan disavow the result. Her settlement figures appear, at best, to have been a moving target. "The court's goal is not to impose a *penalty*, as the propriety of punishment for violation of the Rules of Professional Conduct is a matter within the purview of the State Bar, not of a court presiding over the affected case. (See Bus. & Prof. Code, § 6077; *Noble v. Sears, Roebuck & Co.* (1973) 33 Cal.App.3d 654, 658–659 [109 Cal.Rptr. 269].) Instead, what the court must do is focus on identifying an appropriate remedy for whatever *improper effect* the attorney's misconduct may have had in the case before it." (*Myerchin v. Family Benefits, Inc., supra*, 162 Cal.App.4th 1527, 1538.) There was no improper effect.

The judgment is affirmed. Respondent shall recover costs.

Yegan, Acting P. J., and Coffee, J., concurred.

A petition for a rehearing was denied August 25, 2008, and appellant's petition for review by the Supreme Court was denied November 12, 2008, S166787.