Filed 3/21/16  Jara v. Cruikshank CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RACHEL JARA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>STUART CRUIKSHANK,<br><br>    Defendant and Respondent. | 2d Civil No. B261135<br>(Super. Ct. No. 1186479)<br>(Santa Barbara County) |

This appeal arises from proceedings concerning custody of the parties' daughter, Frances, hereafter "Frankie," a person suffering from autism.  Rachel Jara (mother) appeals from a postjudgment order granting the motion of Stuart Cruikshank (father) to stay California proceedings on the ground that California is an inconvenient forum and Texas is a more appropriate forum.[1]  She also appeals from an order denying her request for $125,000 in attorney fees and costs.  Mother contends that the trial court (1) erroneously granted father's motion for reconsideration of its original ruling denying his inconvenient forum motion, (2) improperly exercised its power to reconsider its original ruling sua sponte, (3) denied mother her right to present live testimony at an evidentiary hearing, (4) abused its discretion in determining that California is an

_____

[1] An appeal may be taken "[f]rom an order . . . granting a motion to stay the action on the ground of inconvenient forum."  (Code Civ. Proc., § 904.1, subd. (a)(3).)  An appeal may also be taken from an order made after an appealable judgment.  (*Id*., subd. (a)(2).)

inconvenient forum, and (5) abused its discretion in denying mother's request for attorney fees and costs. We affirm.

*Factual and Procedural Background*

As we explain below, the standard of review is abuse of discretion. Pursuant to this standard, we must "'resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge all reasonable inferences to support the trial court's order.' [Citation.]" (*Haley v. Casa Del Rey Homeowners Assn.* (2007) 153 Cal.App.4th 863, 872; see also *McMillan v. Shadow Ridge At Oak Park Homeowner's Assn.* (2008) 165 Cal.App.4th 960, 965 ["conflicts in the declarations must be resolved in favor of the prevailing party"].)

The parties married in 1992. They separated in 2002, and the marriage was dissolved in 2003. The parties have four children. Frankie, who was born in September 1999, is the only child presently below the age of majority.

During their marriage, the parties lived in Texas. In 2004 mother and the four children moved to California. In 2006 Frankie returned to Texas to live with father.

In 2006 a Texas court determined that it was an inconvenient forum for litigation of child custody issues and that California was a more convenient forum. Thus, the Texas court declined to exercise jurisdiction over custody issues. On the other hand, the court "retain[ed] jurisdiction over child support to be paid by the father." The court stayed and abated further proceedings in Texas "until the custody issues are disposed of by the Superior Court of Santa Barbara [County], California."

The Santa Barbara court accepted jurisdiction over child custody issues. In 2008 it ordered that Frankie "shall remain in [father's] care and he shall have sole legal custody regarding her treatment and care."

Father "relocated to different school districts in the Dallas, Texas area to make sure [Frankie] had access to schools with the best programs for autistic children. [He] also maintained her enrollment in the Gail Wayman Center, which provides expert counseling and matriculation services to children with autism. [He] also employed one to two full-time caretakers to help meet her needs at home."

2

Frankie lived in Texas under father's care until November 2013, when father moved her to Melmark, a facility in Berwyn, Pennsylvania. Melmark is "a comprehensive residential multi-service agency for autistic children and young adults." Father moved her there "[o]n the advice of mental health caregivers who have worked with Frankie since she was a small child . . . ." Father is paying "in excess of $30,000 per month for her care at Melmark."

Linda Felini-Smith, a licensed psychologist who evaluated Frankie in July 2013, opined: "Frankie needs [a] more restrictive setting for her to make meaningful progress. She has experienced the full continuum of services that can be offered in public school: inclusion, full-time autism classroom, private day school specializing in autism, and she has not been successful. The next step is a residential setting." "[A] residential placement is appropriate and needed at this time as environmental, personnel, and procedure variables can be stable 24 hours a day every day of the week, and appropriate skills can be targeted by appropriate professionals across all settings including within the home."

"In 2012 [mother] contacted the Texas Attorney General . . . and asked them to enforce alleged non-payment of child and spousal support." The Attorney General "filed suit against [father]."

In Texas father filed a petition to modify the 2003 Texas divorce decree and the 2008 Santa Barbara court order. Father requested that mother be ordered to pay child support for Frankie. In July 2014 the Texas court found that, in the 2003 divorce decree, mother had been "ordered to pay 50% of the children's health care expenses not paid by insurance." She had failed to make these payments and "is in arrears in medical support reimbursements to [father] in the amount of $124,647.25 for the period July 1, 2006 through May 30, 2013." The court awarded this amount to father, payable at the rate of $625 per month. The court also ordered mother to pay monthly support of $223 for Frankie.

In September 2014 mother filed in the Santa Barbara court a request for modification of that court's 2008 order granting father sole legal custody of Frankie.

3

Mother wanted the parties to have joint legal custody "pending the completion of a custodial evaluation." Mother asserted: "By shipping Frankie to Pennsylvania where she has no family contact, [father] has interfered with [mother's] ability to have a relationship with Frankie. Further, because [mother] does not have legal custody of Frankie, [mother] cannot even obtain information about Frankie from Melmark. If custody is not modified, then [mother's] relationship with the parties' daughter will be irreparably harmed."

Mother requested that father be ordered to "immediately make Frankie available in Santa Barbara for a one-week visit with [mother] and her family . . . or alternatively . . . immediately pay for all travel and lodging costs, including flight, rental car, and hotel, for [mother] and her husband to visit Frankie in Texas or in Pennsylvania for a one-week period." In addition, mother requested that, pending the completion of the custodial evaluation, father "make Frankie available for a visitation by [mother] at least once a month, for a period of no less than four days, . . . either in Pennsylvania, Texas, or in Santa Barbara." Mother also requested that father be ordered to "contribute no less than $75,000 to [mother's] anticipated attorney's fees and costs in connection with this postjudgment litigation in California and no less than $50,000 to [mother's] attorney's fees and costs in connection with the postjudgment litigation in Texas."

Pursuant to Family Code section 3427,[2] father filed a motion to stay California proceedings on the ground that California is an inconvenient forum and Texas is a more appropriate forum. On November 4, 2014, the Santa Barbara court denied the motion. It awarded mother attorney fees and costs of $15,000. On November 24, 2014, mother filed a new request for attorney fees and costs of $125,000: $75,000 for litigation in California and $50,000 for litigation in Texas.

Father filed a request for reconsideration of the Santa Barbara court's inconvenient forum ruling. (Code Civ. Proc., § 1008, subd. (a).) He alleged that "new facts and circumstances . . . require a different legal analysis than the Court was able to make in its initial ruling." A new fact was that at a hearing on July 25, 2014, the Texas

_____

[2] Unless otherwise stated, all further statutory references are to the Family Code.

4

court had "made a ruling regarding Frankie's support and placement along with a finding that jurisdiction over the issues related to Frankie is in Texas." Father further alleged that the transcript of the Texas hearing "was not available" until after the Santa Barbara court had ruled on the inconvenient forum issue. Father attached a copy of the Texas transcript and requested that the Santa Barbara court take judicial notice of it. The court granted the request.

At the hearing on the request for reconsideration, mother objected that "[t]here is no new evidence" justifying reconsideration of the Santa Barbara court's ruling that California is not an inconvenient forum. The court responded, "I don't even need new evidence. I can reconsider my order sua sponte and . . . I don't think I fully appreciated how many of the witnesses that would potentially testify are located in Texas. California has had no contact with Frankie for eight years." "The facts and circumstances leading up to her placement in Pennsylvania are issues that are going to have to be considered and those people who could attest to that are in Texas." Mother stated that, if the court intended to reconsider the inconvenient forum issue, she was requesting an evidentiary hearing on the issue. The court did not rule on mother's request. Mother continued, "So it sounds like . . . the Court is reconsidering it based on its sua sponte power." The court replied, "Well, that's part of it." "I've made the decision to relinquish jurisdiction of the custodial issues . . . to Texas."

The court signed a document entitled "Findings and Order after Hearing." It granted father's request for reconsideration of the inconvenient forum issue but noted that it "has inherent power to reconsider its orders *sua sponte*. [Citations.]" The court "decline[d] to exercise jurisdiction pursuant to section 3427 on the basis of inconvenient forum." It reasoned: "[Frankie] has lived less than two of her fifteen years in California. She has not been in California for the last eight years. Texas is the state where her sole legal and physical guardian [i.e., father] lives and where her counselors, doctors, teachers and caregivers live. The vast majority of witnesses are located in Texas, with only [mother] and Kathleen Duval located in California. The Court finds that the state of Texas is best situated to make custody decisions in Frankie's best interests. The court

5

finds that the State of Texas has more recent and in-depth 'familiarity with the facts and issues in the pending litigation.' (Family Code section 3427[,] subd. (b)([8]).)"

In its "Findings and Order after Hearing," the court did not mention mother's request for an evidentiary hearing. It affirmed the earlier ruling awarding mother attorney fees and costs of $15,000, but denied her subsequent November 24, 2014 request for $125,000 in attorney fees and costs.

*The Trial Court Properly Exercised Its*

*Power to Reconsider Its Ruling Sua Sponte*

Mother contends that the trial court erroneously granted father's request for reconsideration. We need not and do not consider this issue because the trial court made clear that, regardless of the request for reconsideration, it was exercising its power to reconsider its ruling sua sponte. Code of Civil Procedure section 1008, which authorizes an application for reconsideration, does "not limit the court's ability, on its own motion, to reconsider its prior interim orders so it may correct its own errors." (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107.) "If a court believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief." (*Id*., at p. 1108.) "Thus, it is clear that a party's filing of a motion for reconsideration in violation of the reconsideration statutes does not erect a permanent, insurmountable barrier to reconsideration by the trial court on its own motion." (*In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1309.) "[T]he trial court's inherent authority to correct its errors applies even when the trial court was prompted to reconsider its prior ruling by a motion filed in violation of [Code of Civil Procedure] section 1008." (*Id*., at pp. 1303-1304.)

Mother asserts: "While the trial court was correct [that] it retained the power to review its interim orders *sua sponte*, it abused its discretion here because a trial court's *sua sponte* reconsideration cannot be based on new evidence." (See *In re Marriage of Barthold*, *supra*, 158 Cal.App.4th at p. 1314 ["in order to grant reconsideration on its own motion, the trial court must conclude that its earlier ruling was wrong, and change that ruling *based on the evidence originally submitted*"].) Mother

6

assumes that the trial court's sua sponte reconsideration was based on new evidence, i.e., the transcript of the July 25, 2014 Texas hearing. This was the basis for father's request for reconsideration. But at the Santa Barbara hearing the trial court made clear that its sua sponte reconsideration was based not on the Texas transcript but on its realization that it had not "fully appreciated how many of the witnesses that would potentially testify are located in Texas" and that "California has had no contact with Frankie for eight years." The trial court's sua sponte reconsideration "was intended to correct an order that the court had come to believe was erroneous" irrespective of any new evidence disclosed by the Texas transcript. (*In re Marriage of Barthold*, *supra*, 158 Cal.App.4th at p. 1309.) The court told mother that, to reconsider its ruling sua sponte, "I don't even need new evidence."

Mother contends that the trial court erroneously failed (1) to give the parties notice of its intent to reconsider its ruling sua sponte, and (2) to conduct a hearing on the matter. Mother relies on the following passage from *Le Francois v. Goel*, *supra*, 35 Cal.4th at p. 1108: "To be fair to the parties, if the court is seriously concerned that one of its prior interim rulings might have been erroneous, and thus that it might want to reconsider that ruling on its own motion[,] . . . it should inform the parties of this concern, solicit briefing, and hold a hearing. [Citations.]" The trial court substantially complied with this procedure. At the hearing on father's request for reconsideration, the court gave mother notice of its intent to reconsider its ruling sua sponte and allowed mother to present argument on the issue. Mother did not request an opportunity to file briefing. Even if the trial court had committed procedural error, mother has not shown that the error resulted in a miscarriage of justice. "Under the constitutional principle of reversible error set forth in section 13 of article VI of the California Constitution, we cannot reverse a judgment based on a procedural error unless there has been a miscarriage of justice . . . ." (*People v. Edward D. Jones & Co.* (2007) 154 Cal.App.4th 627, 636.)

*Alleged Denial of Request for an Evidentiary Hearing*

Mother maintains that she was entitled to present live testimony at an evidentiary hearing on father's section 3427 inconvenient forum motion. She argues that

7

the trial court committed reversible error in denying her request for such a hearing. Section 217, subdivision (a) provides: "At a hearing on any . . . notice of motion brought pursuant to this code [the Family Code], absent a stipulation of the parties or a finding of good cause pursuant to subdivision (b), the court shall receive any live, competent testimony that is relevant and within the scope of the hearing . . . ."

When the court indicated that it intended to reconsider its ruling sua sponte, mother requested an evidentiary hearing and a statement of decision. The Court replied, "I'm not providing a statement of decision." The court did not rule on mother's request for an evidentiary hearing, and mother did not press for a ruling. She has therefore forfeited the issue. (*People v. Cunningham* (2001) 25 Cal.4th 926, 984 ["failure to press for a ruling waives the issue on appeal"].)

Even if mother had pressed for a ruling on her request for an evidentiary hearing, she has failed to show how the court's failure to conduct an evidentiary hearing resulted in a miscarriage of justice. Thus, we cannot conclude that the trial court committed reversible error. (See Cal. Const., art VI, § 13; see also Evid. Code, § 354 ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice"].)

*Brewer v. Carter* (2013) 218 Cal.App.4th 1312, is distinguishable. There, the trial court "raised the inconvenient forum issue on its own motion" without providing the parties "an opportunity to present evidence on the issue as required under section 3427." (*Id*., at p. 1319.) The appellate court noted, "[I]n the absence of evidence, the [trial] court could not consider and apply the statutory factors set forth in section 3427." (*Ibid*.) Thus, the appellate court concluded that the trial court had abused its discretion in finding that California was an inconvenient forum. Here, in contrast, father moved for a determination that California is an inconvenient forum. In responding to father's motion, mother had ample opportunity to present evidence through declarations and supporting

documentation.  Mother submitted her own declaration as well as the declarations of nine other persons.

*The Trial Court Did Not Abuse Its Discretion in*

*Determining that California Is an Inconvenient Forum*

"A trial court's ruling to stay custody proceedings on the basis that another forum is more convenient is purely discretionary, and we will not reverse the ruling on appeal unless there was a clear abuse of discretion.  [Citation.]  The trial court's exercise of discretion will be upheld as long as it reflects reasoned judgment and follows correct legal principles and policies.  [Citation.]"  (*Brewer v. Carter*, *supra*, 218 Cal.App.4th at p. 1316.)

Mother argues that, in granting father's inconvenient forum motion, the trial court abused its discretion because it failed to follow correct legal principles and policies. The failure allegedly occurred because the court did not consider all of the eight factors listed in section 3427, subdivision (b).[3]  In its original ruling denying father's inconvenient forum motion, the court *expressly* considered each of the eight factors.  The court did not *expressly* consider each of them when, upon reconsideration of its original ruling, it granted father's motion.  The court said that the analysis underlying its original ruling "doesn't stand."

We must presume that the trial court considered each of the relevant statutory factors even though it did not expressly do so when it granted father's motion.

---

[3] The factors are: "(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.  [¶]  (2) The length of time the child has resided outside this state.  [¶]  (3) The distance between the court in this state and the court in the state that would assume jurisdiction.  [¶]  (4) The degree of financial hardship to the parties in litigating in one forum over the other.  [¶] (5) Any agreement of the parties as to which state should assume jurisdiction.  [¶]  (6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child.  [¶]  (7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.  [¶]  (8) The familiarity of the court of each state with the facts and issues in the pending litigation." (§ 3427, subd. (b).)

Pursuant to the doctrine of implied findings, "if the record is silent, we must presume the trial court fully discharged its duty to consider all of the relevant statutory factors and made all of the factual findings necessary to support its decision for which there is substantial evidence. [Citations.]" (*Brewer v. Carter*, *supra*, 218 Cal.App.4th 1312, 1320.)

In mother's opening brief, the title of subsection B of section II contends, "Family Code Section 3427 Factors Support California Jurisdiction and Thus It Was an Abuse of Discretion for the Trial Court to Grant [Father's] Motion for Inconvenient Forum." (Bold omitted.) This contention is forfeited because it is not supported by meaningful factual and legal analysis explaining why, in view of the section 3427 factors, there is no reasonable basis for the granting of father's motion. (See *Saltonstall v. City of Sacramento* (2015) 234 Cal.App.4th 549, 587-588; *In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

*The Trial Court Did Not Abuse Its Discretion in Denying*
*Mother's Request for $125,000 in Attorney Fees and Costs*

The trial court awarded mother attorney fees and costs of $15,000. It denied her subsequent November 24, 2014 request for $125,000 in attorney fees and costs. Mother contends that she was entitled to have her request granted pursuant to section 2030, which requires the trial court to "ensure that each party has access to legal representation . . . by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party . . . whatever amount is *reasonably necessary* for attorney's fees . . . ." (*Id*., subd. (a)(1), italics added.) The court must "take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties . . . ." (§ 2032, subd. (b).)

We review the trial court's ruling on attorney fees for abuse of discretion. (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 662.) "'[T]he trial court's order will be overturned only if, considering all the evidence viewed most favorably in support

10

of its order, no judge could reasonably make the order made.  [Citations.]'  [Citation.]"
(*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 769.)

The trial court did not abuse its discretion.  Mother has failed to show that the $15,000 award is insufficient and that the requested attorney fees and costs of $125,000 are "reasonably necessary."  (§ 2030, subd. (a)(1).)  "The court should limit an award to fees that were reasonably necessary, including by taking into account overlitigation.  [Citation.]  '"The exercise of sound discretion by the trial court in the matter of attorney's fees includes also judicial evaluation of whether counsel's skill and effort were wisely devoted to the expeditious disposition of the case."'  [Citation.]  '[S]ervices which have no apparent effect other than to prolong and to complicate domestic litigation cannot be deemed "reasonably necessary" [citation] "to properly litigate the controversy."'  [Citation.]"  (*In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 356.)

Moreover, we cannot conclude, as mother alleges, that "[t]he award of $15,000 was not just and reasonable under the relative circumstances" of the parties. Father declared that, although his "gross income is in excess of $100,000 per month," he paid monthly "mandatory deductions for federal taxes, state taxes, pension, health insurance and partner capital loan payments totaling about $72,000."  These deductions left him with "remaining discretionary income of about $54,000" per month.  (Bold omitted.)  From this remaining income, father paid $50,435 each month for Frankie's care at Melmark, for the college education of the parties' two elder sons, and for other expenses.  He has "about $3,500 left over . . . each month - and that money goes to pay [his] attorneys to respond to wave after wave of litigation from [mother]."  Father does not own a home or investment rental property.  He has "about $195,000 in non-retirement financial assets, which represents the extent of [his] available assets."  Father continued: ". . . I must start paying for our youngest son's post-secondary education expenses after he finishes high school.  At that time, I will have three children in college and Frankie's care to plan and pay for.  Frankie will need care her entire life - without fail.  If I become disabled or lose my job, my savings is all I have to maintain the boys'

11

education and Frankie's care. [¶] . . . I have already invaded my savings in order to pay my attorneys to respond to [mother's] latest round of litigation."

*Disposition*

The orders appealed from are affirmed. Father shall recover his costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

Donna Geck, Judge

Superior Court County of Santa Barbara

_____

Clark Everson, Danielle R. Everson; Melissa B. Buchman, for Plaintiff and Appellant.

Vanessa Kirker Wright; Kirker Moore, for Defendant and Respondent.