Filed 8/4/22  Cohen v. S.H.E. Engineering & Construction Group CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| ZION COHEN, | B312954 |
| Cross-complainant and Appellant, | (Los Angeles County Super. Ct. No. LC102030) |
| v. | |
| S.H.E. ENGINEERING & CONSTRUCTION GROUP, INC. et al. | |
| Cross-defendants; | |
| DAVID SHEETRIT | |
| Cross-defendant, Respondent, and Real Party in Interest. | |

APPEAL from an order of the Superior Court of Los Angeles County, Huey P. Cotton, Judge.  Affirmed.

Law Office of Ami Meyers and Ami Meyers for Cross-complainant and Appellant.

Leichter Leichter-Maroko and Ariel Leichter-Maroko for Cross-defendant, Respondent, and Real Party in Interest.

_____

## INTRODUCTION

In 2017, appellant Zion Cohen obtained a judgment against S.H.E. Engineering & Construction, Inc. (SHE). In the proceedings below, Cohen attempted to amend the judgment to add respondent David Sheetrit -- one of SHE's principals -- as SHE's alter ego. The court denied the motion.

On appeal, Cohen contends the court: (a) decided the motion based on a misunderstanding of the law; (b) made findings unsupported by substantial evidence; (c) failed to consider Cohen's allegation that Sheetrit breached a fiduciary duty owed to him; and (d) improperly considered Sheetrit's filings because they were made by an attorney who had not filed a substitution of counsel. We find nothing in the record demonstrating the court misunderstood the law. Because the court found that Cohen failed to meet his burden of proof, we consider not whether substantial evidence supported the court's findings, but whether Cohen's evidence compelled the court to make a different finding; we conclude it did not. We discern no error in the court's decision not to address Cohen's fiduciary duty argument,

2

because Cohen presented no authority permitting a court to amend a judgment to add a judgment debtor as an alter ego due to an alleged breach of fiduciary duty. Finally, we conclude the court did not err in considering Sheetrit's filings, even though they were made by an attorney who had not filed a substitution of counsel. We therefore affirm.

## STATEMENT OF RELEVANT FACTS

### A. *Cohen Obtains a Judgment*

In November 2014, Cohen filed a cross-complaint against SHE, Sheetrit, Sheetrit's wife Ilana, and The Hanover Insurance Company (Hanover). The gist of his cross-complaint was that Cohen had performed work for SHE as a subcontractor but had not been paid in full and was still owed $100,000. Cohen additionally alleged that SHE had obtained a performance bond from Hanover, from which he was entitled to be paid the amount owed. In September 2017, Cohen obtained a judgment against SHE and Hanover Insurance Company in the amount of $78,900.[1]

---

[1] The court awarded Cohen the $100,000 he demanded, but noted that "SHE and Hanover are entitled to an offset of $21,100.00 (including Equipment Claims of $4,500.00, Trench Shoring Rental Claims of $8,000 and Lost/Damaged Equipment Claims of $8,600.00)."

3

## B. *Cohen Gathers Evidence*

### 1. Debtor's Examinations

In December 2019 and again in February 2020, Sheetrit appeared on behalf of SHE for debtor's examinations noticed by Cohen. Sheetrit testified that SHE had been inactive for over five years, and that its profit and loss statements showed no profit for 2017 or 2018. SHE had no assets or projects and expected no payments. Sheetrit claimed he did not remember if SHE ever had any assets, and that a list of SHE's assets and liabilities did not exist.[2]

Sheetrit attested that SHE held corporate meetings approximately once a year, and that records of these meetings were kept in SHE's office. Sheetrit testified that "at its height," SHE had more than one employee, but he did not remember how many. He likewise stated that SHE had fewer than five shareholders (of which he was one), but he did not know if there were more than two. Sheetrit denied ever using SHE's bank accounts for personal expenses and claimed that he personally paid for all of SHE's attorneys' fees in the underlying case.

---

[2] While the question regarding the list of SHE's assets and liabilities did not specify a time period, immediately before the question, Sheetrit was asked if he had SHE's profit and loss records "for the years 2017 and 2018," and if he had SHE's bank account statements "from the year 2017 and onward." Additionally, immediately after Sheetrit's testimony about the list of SHE's assets and liabilities, Sheetrit was asked whether SHE had bank accounts "for the year 2017 and onward."

4

### 2. Document Subpoenas

In September 2019, Cohen subpoenaed Richard Kissen for SHE's profit and loss statements from 2017 and 2018, SHE's bank account statements beginning in 2017, and a list of SHE's assets and liabilities. Kissen produced SHE's 2017 and 2018 profit and loss statements, which showed SHE paid $5,835 to Etamar Sheetrit in 2017 as "commission."

In June 2020, Cohen subpoenaed JP Morgan Chase Bank for SHE's bank statements and checks beginning in September 2016. The documents produced by the bank included bank statements in SHE's name, checks with SHE's name and address in the upper left-hand corner, and slips of paper that appeared similar to these checks and contained the same account number, but which bore Sheetrit's name and address in place of SHE's in the upper left-hand corner and contained the notation "Authorized by your Depositor." Four checks were made out to Etamar in 2017 and totaled $11,625.

### C. *Cohen Moves to Amend the Judgment*

In August 2020, Cohen moved to amend the judgment to include Sheetrit as a judgment debtor, contending Sheetrit was SHE's alter ego. Cohen argued that Sheetrit treated SHE's assets as his own;[3] that SHE was

---

[3] Cohen cited the slips of paper that appeared to be checks with Sheetrit's name and address but SHE's account number, and the fact that Sheetrit claimed he had personally paid all the fees for his and SHE's attorney in the underlying litigation, when *(Fn. is continued on the next page.)*

inadequately capitalized and had no corporate assets;[4] that SHE failed to maintain meeting minutes or adequate corporate records;[5] that Sheetrit and his family owned SHE;[6] and that Sheetrit and SHE used the same attorney.[7]  Cohen additionally alleged that while SHE had ceased doing business after the judgment in the underlying case, Sheetrit had incorporated David and Sons Remodeling, Inc. a few months before the judgment, and both companies had the same address.

In his opposition, Sheetrit claimed that the "checks" Cohen had identified bearing his name were actually "slips produced by the bank every time a credit card payment [wa]s made to a merchant through a phone call," that were generated as proof of payments he authorized to be paid with SHE's card.  He also explained that Etamar Sheetrit was a

---

the records demonstrated that SHE, too, had paid the attorney. Cohen also alleged Sheetrit had understated to his accountant the amount SHE had paid members of his family.

[4]     Cohen cited Sheetrit's testimony that SHE had no assets and that he did not remember if it ever had assets.

[5]     Cohen cited Sheetrit's testimony that no records of SHE's assets and liabilities existed and his inability to remember whether SHE employed more than three people.

[6]     Cohen cited the fact that Sheetrit was SHE's president, CEO, CFO, director, and agent for service of process while also one of SHE's shareholders.

[7]     Cohen cited the fact that the attorney who represented Sheetrit in the appeal of the underlying case had also represented SHE in a companion case.

subcontractor, and the payments beyond the $5,835 listed as commission were reimbursements to Etamar for materials provided to SHE in 2017. Sheetrit additionally claimed that SHE had held regular corporate meetings and kept minutes of those meetings, that he had never used SHE's funds for personal expenses, and that SHE had had other employees besides Sheetrit. Sheetrit's opposition was not supported by a declaration from him, and was filed by the Kruger Law Firm, which did not file a substitution of counsel.[8] In Cohen's reply, he contended the court should disregard Sheetrit's opposition due to "Kruger's failure to properly substitute in as attorney of record . . . ."

Before the hearing on the motion in September 2020, the court issued a tentative ruling granting it. After the parties argued, however, the court continued the matter to permit supplemental briefing. In a supplemental opposition, Sheetrit submitted a declaration and clarified that the payment slips generated by the bank were receipts for telephonic payments he authorized to be made from the corporate bank account. Sheetrit also provided more details regarding the payment to Etamar, and the nature of Etamar's professional relationship with SHE. Sheetrit additionally explained that after the judgment against SHE was entered in the underlying case, SHE lost its bond with Hanover and could not obtain another one, stymying any chance of obtaining future government contracts. Sheetrit

---

[8]      At trial, Sheetrit had been represented by other counsel.

7

declared that before that, "SHE was not undercapitalized as SHE was bonded by The Hanover Insurance Group, and had government contracts for SHE's services."[9]  He also averred that SHE and David and Sons Remodeling, Inc. were distinct companies providing different services -- SHE was a construction company primarily engaged in obtaining government contracts for public works, while David and Sons Remodeling constructed, designed, and remodeled homes in Sacramento.  Sheetrit reiterated that SHE had held regular corporate meetings, whose minutes were kept in SHE's office.  In Cohen's supplemental reply, he raised a new argument that Sheetrit was liable to Cohen because SHE's bank statements showed SHE had received over $155,000 in March and April 2018, but Sheetrit had failed to direct SHE to pay its judgment creditors with that money, constituting a breach of SHE's fiduciary duty to Cohen "through Sheetrit."

After the court heard further argument in February 2021, it took the matter under submission and subsequently denied the motion.  While the court found the transcript of Sheetrit's debtor's examinations left it "with the impression that Mr. Sheetrit was being deliberately evasive," the court found that "nothing in the transcript alone shows an alter ego relationship."  As to Cohen's other evidence, the court found that the checks and payment slips from SHE's bank

---

[9]     Cohen filed a written objection that this testimony was a legal conclusion that lacked foundation, but the court did not rule on the objection.

8

did not meet Cohen's burden to show comingling, and that Sheetrit had adequately explained the payments to Etamar, as well as the differences between SHE and David and Sons Remodeling, Inc. The court also found that "at most," Cohen "suggests undercapitalization but cannot prove undercapitalization throughout [his] dealings with SHE. While SHE is admittedly insolvent currently, that is not conclusive evidence that SHE was always undercapitalized." The court additionally noted Cohen's failure to "address the significance of SHE's bond . . . ." Finally, the court found Cohen had failed to prove SHE did not follow corporate formalities in light of Sheetrit's testimony that it had held corporate meetings at least yearly and his declaration that SHE observed corporate formalities. Recognizing that "[t]he ordinary 'preponderance of the evidence' standard applies in determining whether to grant a post-trial motion to add an alleged alter ego as a judgment debtor," the court concluded that Cohen "has not provided a preponderance of evidence that Sheetrit was the alter ego of judgment debtor SHE." Cohen timely appealed.

## DISCUSSION

### A. *Governing Law and Standard of Review*

Code of Civil Procedure section 187 "grants every court the power and authority to carry its jurisdiction into effect. [Citation.] This includes the authority to amend a judgment to add an alter ego of an original judgment debtor, and

9

thereby make the additional judgment debtor liable on the judgment." (*Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 280, fn. omitted (*Highland Springs*).)

The parties agree that Cohen could not add Sheetrit to the judgment as SHE's alter ego unless Cohen demonstrated: "'(1) the parties to be added as judgment debtors had control of the underlying litigation and were virtually represented in that proceeding; (2) there is such a unity of interest and ownership that the separate personalities of the entity and the owners no longer exist; and (3) an inequitable result will follow if the acts are treated as those of the entity alone.'" (*Highland Springs*, *supra*, 244 Cal.App.4th at 280.)[10]  "It is the plaintiff's burden to overcome the presumption of the separate existence of the corporate entity." (*Mid-Century Ins. Co. v. Gardner* (1992) 9 Cal.App.4th 1205, 1212.)

The court found that Cohen had failed to meet his burden to demonstrate by a preponderance of the evidence that Sheetrit was an alter ego of SHE.  Citing *Highland Springs*, Cohen contends we should review the court's findings of fact for substantial evidence. (*Highland Springs, supra,* 244 Cal.App.4th at 280.)  Sheetrit counters that Cohen had the burden of proof and "'where the issue on appeal turns on a failure of proof at trial, the question for a

_____

[10]     The first factor is not in dispute; Sheetrit was a cross-defendant in the cross-complaint brought by Cohen, and both Sheetrit and SHE were represented by the same attorney.

10

reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.""" (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) In his reply brief, Cohen fails to respond to Sheetrit's contention. We agree the standard articulated in *Sonic Manufacturing Technologies* applies.

## B. *The Court Did Not Err in Finding Cohen Failed to Meet His Burden of Proof*

### 1. The Court Did Not Misunderstand the Law

We review a trial court's understanding of the law de novo. (See, e.g., *In re Marriage of Mullonkal & Kodiyamplakkil* (2020) 51 Cal.App.5th 604, 613 ["in determining whether the trial court has abused its discretion, we first determine de novo whether the trial court applied the correct legal standard when exercising discretion"]; *Golden Gate Land Holdings LLC v. East Bay Regional Park Dist.* (2013) 215 Cal.App.4th 353, 371 ["We review the trial court's interpretation of [a statute] de novo"].) On appeal, Cohen accuses the trial court of misunderstanding the law in two ways.

11

First, Cohen takes the court to task for stating that "'nothing in the [judgment debtor's exam] transcript alone shows an alter ego relationship.'" He complains the trial court failed to "provide any legal authority for the proposition that the transcript 'alone' must show that relationship." To the extent Cohen contends the trial court erred by concluding he must prove alter ego using only the debtor's examination transcripts, the premise of his argument is flawed. As evidenced by the fact that the court analyzed the other evidence Cohen provided, its statement was merely a comment that Sheetrit's inability to remember basic facts about SHE, as well as his evasiveness in answering questions, insufficiently demonstrated a unity of interest.

Second, Cohen takes issue with the court's statements that "at most," he "suggests undercapitalization but cannot prove undercapitalization throughout [his] dealings with SHE. While SHE is admittedly insolvent currently, that is not conclusive evidence that SHE was always undercapitalized." Cohen contends the court erred in finding he was required to produce "'conclusive evidence'" or show undercapitalization "'throughout'" his dealings with SHE. We agree that Cohen did not need to produce "conclusive evidence" -- the standard is preponderance of the evidence. (*Highland Springs*, *supra*, 244 Cal.App.4th at 280.) But given that the court twice recognized the correct standard in its minute order, we interpret its statement regarding "conclusive evidence" as articulating merely that the court

12

was unprepared to conclude SHE was undercapitalized based on its current insolvency.

Additionally, the court was required to determine whether SHE was "so undercapitalized that it [wa]s likely to have no sufficient assets to meet its debts." (*Butler America, LLC v. Aviation Assurance Co., LLC* (2020) 55 Cal.App.5th 136, 146.) Thus, we interpret the court's statement that there was no evidence SHE was undercapitalized "throughout" its dealings with Cohen as a statement that he had failed to meet his burden to demonstrate SHE had insufficient assets to meet its debts to Cohen when their relationship began.

### 2. Cohen's Evidence Did Not Compel a Finding That Sheetrit and SHE Had a Sufficient Unity of Interest

"The first requirement for disregarding the corporate entity under the alter ego doctrine—whether there is sufficient unity of interest and ownership that the separate personalities of the individual and the corporation no longer exist—encompasses a series of factors. Among the many factors to be considered in applying the doctrine are one individual's ownership of all stock in a corporation; use of the same office or business location; commingling of funds and other assets of the individual and the corporation; an individual holding out that he is personally liable for debts of the corporation; identical directors and officers; failure to maintain minutes or adequate corporate records; disregard

13

of corporate formalities; absence of corporate assets and inadequate capitalization; and the use of a corporation as a mere shell, instrumentality or conduit for the business of an individual. . . . "'No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine.'"" (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1073.) Below, we review the evidence Cohen provided to the court and conclude it is neither """uncontradicted and unimpeached""" nor """of such a character and weight as to leave no room for a judicial determination that it was insufficient to support"" the court's finding that he failed to meet his burden to demonstrate a unity of interest. (*Sonic Manufacturing Technologies, Inc.*, *supra*, 196 Cal.App.4th at 466.)

### (a) Treating Corporate Assets as His Own

Cohen's evidence that Sheetrit treated SHE's assets as his own consisted of: (1) the "'payment slips'" containing Sheetrit's name and address along with SHE's bank account number; (2) SHE's payment to its and Sheetrit's joint attorney in the underlying lawsuit; and (3) Sheetrit's alleged understatement to his accountant regarding the amount SHE paid members of his family. On appeal, he also argues that Sheetrit allegedly "drained" SHE of the more than $155,000 it received after the judgment was entered.

However, Sheetrit explained that the payment slips were not checks that he wrote on SHE's account, but instead

14

were records generated by the bank to document that he had authorized a payment to be made from SHE's account. The court appears to have accepted this explanation, and nothing in the record compels a contrary conclusion.

As for the fact that both SHE and Sheetrit paid the same lawyer in the underlying litigation, both SHE and Sheetrit were cross-defendants in the underlying litigation. We see nothing remarkable about the fact that both issued payments to their attorney.

Regarding the accusation that Sheetrit understated the amount paid to family members, we presume Cohen refers to the fact that SHE's 2017 profit and loss statement showed a payment of $5,835 to Etamar Sheetrit for "commission" when bank records showed SHE had paid Etamar $11,625 in 2017. Sheetrit explained, however, that SHE paid $5,835 to Etamar as commission, and the balance as reimbursement for materials Etamar purchased for SHE as a subcontractor. Again, the court appears to have accepted this explanation, and nothing in the record compels a different conclusion.

Finally, as for Cohen's contention that "the lower court failed to mention records from SHE's bank showing that after the judgment, Sheetrit had drained SHE of $155,000," the bank statements in the record demonstrate that in March and April 2018, a total of approximately $156,000 was both deposited into and debited from SHE's bank account. However, Cohen cites nothing to support his conclusion that these debits were caused by Sheetrit "drain[ing]" the account. We therefore find that Cohen's

evidence did not compel a finding that Sheetrit treated SHE's assets as his own.

### (b)    Undercapitalization

Cohen argues SHE was undercapitalized because it had no assets and "perhaps never had any assets."  That SHE had no assets at the time of Sheetrit's testimony did not speak to undercapitalization -- Sheetrit testified SHE had been inactive for over five years, so it is unsurprising that it lacked assets.  The only evidence Cohen presented that SHE never had assets was Sheetrit's testimony that he did not remember if SHE ever had assets.  While the veracity of such testimony is certainly questionable (SHE paid its lawyer in the underlying litigation using a check drawn on its bank account), we do not find it sufficient to compel a conclusion that SHE had no assets during its relationship with Cohen.

Cohen also objects to the court's consideration of SHE's bond.  Sheetrit submitted a declaration stating that "SHE was not undercapitalized as SHE was bonded by The Hanover Insurance Group, and had government contracts for SHE's services."  Cohen objected to this testimony as a legal conclusion that lacked foundation, arguing it was for the court to decide whether SHE was adequately capitalized. While the court did not rule on these objections which Cohen reasserts on appeal, we find them largely without merit.  We agree that the court, not Sheetrit, was to decide whether SHE was adequately capitalized, but we find Sheetrit had

16

ample foundation (as SHE's president) to state that SHE had a bond issued by Hanover, along with government contracts for SHE's services. Cohen now argues that the court erred in considering the bond without knowing its amount, but Cohen himself alleged in his cross-complaint that, because of the bond Hanover issued to SHE, Cohen was entitled to demand that Hanover pay him the entire amount owed; indeed, Cohen was awarded a judgment against Hanover for that amount (less an offset for claims made against Cohen). It was therefore reasonable for the court to infer that SHE's bond sufficiently capitalized SHE for its dealings with Cohen.

### (c)　Failure to Maintain Records

Cohen argues that SHE failed to maintain adequate records because "Sheetrit supposedly could not remember whether SHE employed more than three people, and further testified that no records of SHE's assets and liabilities exist." As to the employees, Sheetrit's actual testimony was that, at its height, SHE had more than one employee, but he did not remember how many. Even if Sheetrit's memory was deliberately faulty, we see no connection between his forgetfulness or evasiveness and the conclusion that SHE did not maintain corporate records. As for a record of SHE's assets and liabilities, while Sheetrit did testify there was no such record, in the context of the examination in which Sheetrit was being asked about documents from 2017 onward, Sheetrit's answer could reasonably be interpreted as

17

stating that there was no record of SHE's assets and liabilities after 2017 because the company was no longer doing any business. Furthermore, Sheetrit testified that the company had held yearly meetings, and that minutes of those meetings were stored in SHE's office.

### (d)   Owning and Controlling SHE

Cohen argues that because Sheetrit occupied several positions in SHE (shareholder, president, CEO, CFO, director, and agent for service of process), "SHE does not exist as an entity apart from" Sheetrit. While Sheetrit's multiple roles in SHE are a factor in favor of finding alter ego, Cohen provides no authority that such a factor is determinative.

### (e)   Using the Same Attorney

Cohen argues that "Sheetrit's use of the same attorney . . . as SHE warrants piercing the veil as to Sheetrit because it shows that Sheetrit (and his attorney) held that no conflicts existed between Sheetrit and SHE." But Cohen presents no authority that an alignment of an individual and his company's interests in litigation compels a finding that they are alter egos.[11]

---

[11]    Cohen cites *Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, which lists "the employment of the same employees and/or attorney" as a factor to consider in the alter ego analysis. (*Id.* at 839.) Nowhere does *Associated Vendors* (or any other case) hold this factor is dispositive.

18

### (f) David and Sons Remodeling, Inc.

Cohen argues it is significant that David and Sons Remodeling operates from the same principal address as SHE. But Sheetrit explained that David and Sons Remodeling and SHE conducted different lines of business, and Cohen presented no evidence to the contrary. While Cohen argues it is "improbab[le]" that a company headquartered in Los Angeles County would be doing remodeling work in Sacramento, this is insufficient to compel a finding that David and Sons Remodeling, Inc. is a continuation of SHE.[12]

### (g) Cohen's Evidence as a Whole

We find that while portions of Cohen's evidence may have supported a finding that SHE and Sheetrit were alter egos, taken together, the evidence is neither uncontradicted and unimpeached nor of such a character and weight as to leave no room for the court's determination that Cohen failed to meet his burden. We therefore conclude that Cohen has failed to demonstrate the court erred in finding he had not

---

[12] Cohen also complains the court did not "give any legitimate reason for Sheetrit's opening the new entity," but acknowledges that SHE could not obtain any government contracts after the judgment due to its inability to get the necessary bonds. It requires no leap of logic to infer Sheetrit opened David and Sons Remodeling, Inc. after it was no longer viable for SHE to continue as a business reliant on government contracts.

19

met his burden to demonstrate a unity of interest between Sheetrit and SHE.[13]

### C.   *Sheetrit's Alleged Breach of Fiduciary Duty Is Irrelevant*

Cohen contends the court erred by failing to consider his argument that Sheetrit (as a director of SHE) breached his fiduciary duty toward Cohen (as a creditor of SHE) by failing to direct SHE to pay Cohen with funds acquired after the judgment. Regardless of whether Sheetrit owed or breached a fiduciary duty to him, Cohen provides no authority permitting a court to amend a judgment to add a director of the judgment debtor solely because the director breached a fiduciary duty to the judgment creditor. Nor have we found such authority.

### D.   *The Court Did Not Err in Considering Sheetrit's Filings*

Cohen argues the court could not consider any filings by Sheetrit's attorney because that attorney had not filed a substitution of counsel. We reject this argument as unsupported by any authority or coherent argument.[14]

---

[13]    Cohen also alleges SHE's insolvency gives rise to an inequitable result as a matter of law. Because we find the court did not err in finding Cohen failed to demonstrate a unity of interest, we need not address this contention.

[14]    Cohen cites Code of Civil Procedure section 285, which stands for the proposition that opposing counsel must "recognize" *(Fn. is continued on the next page.)*

20

(*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.*
(2020) 51 Cal.App.5th 881, 894 ["In order to demonstrate
error, an appellant must supply the reviewing court with
some cogent argument supported by legal analysis"].)

---

an attorney until a substitution of counsel is filed, *Board of
Commissioners v. Younger* (1865) 29 Cal. 147, 149, for the
proposition that "[a] party to an action may appear in his own
proper person or by attorney, but he cannot do both," and
*McMillan v. Shadow Ridge at Oak Park Homeowner's Assoc.*
(2008) 165 Cal.App.4th 960, 964-966, for the proposition that
opposing counsel is entitled to communicate with the plaintiff
when he is in propria persona, even if another attorney is
"assisting" the plaintiff. Neither authority supports the theory
that a trial court must reject a pleading filed on behalf of a party
by an attorney who has not filed a substitution of counsel. In
fact, in *McMillan v. Shadow Ridge at Oak Park Homeowner's
Assoc.*, such a situation occurred without comment from the
appellate court. (*Id.* at 964 [appellate court reviewed decision
denying motion filed by attorney "assisting" plaintiff who had
"not . . . formally substituted into the case"].)

## DISPOSITION

The court's order is affirmed.  The parties shall bear their respective costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.